### MACKAY TELEGRAPH-CABLE CO. v. BAIN et al.†

(Court of Civil Appeals of Texas. Galveston. Dec. 22, 1913. Rehearing Denied Jan. 8, 1914.)

1. GAMING (§ 17*)—DEALING IN FUTURES—"HEDGING."

Pen. Code 1911, art. 536, prohibits the dealing in futures of cotton, etc., and article 539 includes within that designation the purchase of cotton to be delivered in the future without intention of the purchaser that the cotton should be delivered, but article 543 permits it to be shown as a defense, in a prosecution for violating the statute, that the transaction was a "hedging" contract between a party in the state and parties without the state. *Held*, that persons doing business in Texas could lawfully hedge against loss on cotton bought by them by the sale through brokers of cotton futures in Liverpool, England, so that a telegram advising the brokers in England to hedge on behalf of such persons was not in furtherance of an illegal act; "hedging" contracts being where one buys certain cotton at the current price and sells an equal amount for future delivery, so as to protect himself from loss due to fluctuation in the market.

[Ed. Note.—For other cases, see Gaming, Cent. Dig. §§ 29–35; Dec. Dig. § 17.*]

2. TELEGRAPHS AND TELEPHONES (§ 73*)—ACTION FOR MISDELIVERY—JURY QUESTION—CONTRIBUTORY NEGLIGENCE.

In an action against a telegraph company for damages for improperly transmitting a telegram to brokers in England directing the sale of cotton futures, whether plaintiffs were guilty of contributory negligence in not telegraphing to England on Saturday immediately after discovering the mistake in the telegram sent instead of waiting until Monday to correct the error *held* a jury question.

[Ed. Note.—For other cases, see Telegraphs and Telephones, Cent. Dig. § 76; Dec. Dig. § 73.*]

3. TELEGRAPHS AND TELEPHONES (§ 74*)—ERROR IN TRANSMISSION.

Where, in an action against a telegraph company for damages from failure to properly transmit a telegram to Liverpool brokers directing the sale of 800 bales of cotton for future delivery to cover fluctuations in price of 800 bales actually purchased in the state, it appeared that if the sale had been made on Monday plaintiffs' loss would have been $200, while they gained $510 by having meanwhile sold futures on another market to protect themselves from loss from the mistake in the telegram, it was error not to require a finding for defendant, if plaintiffs were not entitled to recover more than the difference between the

Liverpool markets on Saturday and Monday, which was less than plaintiff's profits on the sale on the other market, and to instruct that plaintiffs could recover the difference between the Liverpool prices on Monday and on Saturday less any sum they received in protecting themselves by selling on the local markets.

[Ed. Note.—For other cases, see Telegraphs and Telephones, Cent. Dig. § 77; Dec. Dig. § 74.*]

4. APPEAL AND ERROR (§ 1068*) — HARMLESS ERROR—INSTRUCTIONS.

The giving of the instruction and failure to instruct was not so prejudicial as to require a reversal of the judgment for plaintiffs, the jury having, in effect, found that plaintiffs were not negligent in failing to make a sale on Monday to protect themselves.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4225–4228, 4230; Dec. Dig. § 1068.*]

Appeal from District Court, Harris County; Wm. Masterson, Judge.

Action by S. J. Bain and another against the Mackay Telegraph-Cable Company. From a judgment for plaintiffs, defendant appeals. Affirmed.

Andrews, Ball & Streetman, of Houston, for appellant. B. F. Louis, of Houston, for appellees.

McMEANS, J. The following statement of the nature and result of the suit is taken from the brief of appellant: "This suit was brought against Mackay Telegraph-Cable Company by S. J. Bain and T. D. Warley, partners composing the firm of Bain & Warley, to recover damages charged to have been suffered by them as the result of the alleged erroneous transmission by defendant of a telegraphic message.

"The plaintiffs alleged, in substance: That on, prior to, and after, September 22, 1911, they were engaged in the cotton business at Houston, Tex., and were selling cotton, among other persons, to the firm of Cunningham & Henshaw, of Liverpool, England, who had an agent in Dallas. That, to defendant's knowledge, it was usual and customary for purchasers of cotton to 'hedge' against fluctuations in the market by selling futures against spots bought. That, to defendant's knowledge, the fluctuations in the market price of cotton were frequent, and were likely to be large. That at the time stated, plaintiffs, in the usual course of their business, had in operation an arrangement with Cunningham & Henshaw, whereby it was agreed that whenever plaintiffs should report to Cunningham & Henshaw the purchase of a definite number of bales of cotton, and request that the same be covered, that firm would thereupon sell futures upon the Liverpool exchange against the spots bought, and that Cunningham & Henshaw should pay plaintiffs for all cotton so reported a price which was fixed by adding a certain definite number of points or cents per 100 pounds to the market price at which said futures were sold. That on September 22,

---

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key-No. Series & Rep'r Indexes

† Writ of error denied by Supreme Court.

1911, plaintiffs had on hand 800 bales of cotton, which they desired to sell Cunningham & Henshaw under the terms of said agreement, and that to effect the sale they delivered to defendant at its Houston office, for transmission and delivery to Cunningham & Henshaw at their Dallas office, a written message, Substantially as follows: 'Bought 800 bales. Cover and report early.' That defendant delivered to the addressee of said message, substantially as follows: 'Bought 800 bales. *Come* and report early.' That, by the exercise of due diligence, defendant could have delivered the message in the form originally written, and that, had it been so delivered, Cunningham & Henshaw would have covered the 800 bales on the Liverpool exchange at the opening thereof on the morning of September 23, 1911, when the price of such futures was 5.72 pence, or 11.44 cents per pound, and would thereby have fixed the price which plaintiffs would have received for the 800 bales. But, by reason of defendant's negligence in so changing the message, the purchase was not covered on that day, but remained unfixed until the opening of the Liverpool exchange on September 26, 1911, when the market price.of futures was 5.57 pence, or 11.14 cents, per pound. That plaintiffs' price was accordingly less by $1.50 per bale. That the cover executed on September 26, 1911, was effected as soon as possible, and within a reasonable time, after plaintiffs learned that defendant had not correctly delivered the message. That they learned of the error on Saturday, September 23, 1911, when the Liverpool exchange was closed for the day. That they covered the cotton on the New Orleans exchange until Monday, September, 25, 1911, when, upon the sale of a cover at Liverpool by Cunningham & Henshaw, they closed out the New Orleans transaction by buying in the futures previously sold there. That they profited $510 by the New Orleans transaction, 'which sum, plaintiffs say, in the event so required, may be credited upon said loss occasioned plaintiffs.'

"Defendant answered by general demurrer, general denial, and the following special pleas: (a) That plaintiffs were guilty of contributory negligence in writing the message illegibly; (b) that plaintiffs were guilty of contributory negligence in failing to cable to Liverpool on Saturday, September 23, 1911, as soon as they discovered the alleged error, which would have been in ample time to have the cover sold at the opening of the Liverpool exchange on Monday, at which time there had been only a slight decline in the market; (c) that the transactions sought to be furthered and concluded by the message were illegal, gambling transactions, and that the transactions on the Liverpool and New Orleans exchanges 'constituted a continuing effort on the part of the plaintiffs to make a profit by wagering or betting on the market price of cotton at some future date, all of which is unlawful and illegal'; (d) that, for a valuable consideration, plaintiffs had agreed with defendant that it should not be liable for errors in obscure messages, and that this message was obscure; (e) that the dealings of plaintiff on the New Orleans and Liverpool exchanges constituted one continuing transaction, and that, if plaintiffs were entitled to recover anything, defendant was entitled to have the $510 profit made on the New Orleans exchange applied toward reducing the damages."

The case was tried before a jury, and resulted in a verdict and judgment in favor of plaintiffs for $690, from which the defendant has appealed.

The appellant requested the court to instruct the jury to return a verdict in its favor, and the refusal of the court to do this is made the basis of appellant's first assignment of error, and the first and second propositions presented thereunder are as follows: "Appellees' pleadings and the uncontroverted evidence show that by the terms of appellee's agreement with the firm of Cunningham & Henshaw the price to be received by appellees for spot cotton sold by them to Cunningham & Henshaw was, in each instance to be fixed and determined, as appellees knew, by the price of a sale of 'futures' effected by Cunningham & Henshaw, and ordered and directed by appellees; that, without such order and direction by appellees and consequent sale of 'futures', the price could not be fixed; that the message in question was sent by appellees for the purpose of ordering such sale of 'futures,' and therefore that the whole transaction, including the sale of spot cotton by appellees to Cunningham & Henshaw, was illegal and contrary to public policy, and appellant is not liable in damages for the loss, if any, suffered by reason of the manner of reading, transmitting, and delivering the message. The contract of sale between appellees and Cunningham & Henshaw was shown by the pleadings and the undisputed evidence to have contemplated and been in furtherance of the illegal business of dealing in cotton 'futures,' and required appellees to engage and affirmatively participate in such illegal transactions before any sale by them, under its terms, could be completely executed, and was therefore void, and appellant incurred no liability by preventing appellees from making a profit thereunder."

The plaintiffs were engaged in buying and selling cotton in Houston, Tex. Cunningham & Henshaw were cotton buyers, doing business in Liverpool, England, and had an agent and representative in Dallas, Tex. Frequently plaintiffs, after they had bought cotton, would sell the same to Cunningham & Henshaw through their Dallas agent. The price of cotton thus sold by plaintiffs was fixed by the price at which futures could be sold in Liverpool, with an agreed number of cents per 100 pounds added, and the amount thus arrived at would be the price Cunningham

& Henshaw would pay plaintiffs. It was usual, when plaintiffs had on hand a number of bales of cotton which they desired to sell to Cunningham & Henshaw, to report by telegraph the number of bales to be sold; and if they desired the price to be then fixed they would add in the message "cover and report early." Upon receipt of such a telegram, the Dallas agent of Cunningham & Henshaw would, by cablegram, sell in Liverpool an equal number of bales, and the price for which the futures were sold, with certain points added, would fix the price. This character of transaction is what is generally known as "hedging." Upon this point, H. A. Bardswell, who on September 22, 1911, was the Dallas agent of Cunningham & Henshaw, testified as follows: "I had an arrangement with Bain & Warley relative to the purchase of cotton from them, the agreement being to buy from Bain & Warley at certain number of points, according to grade and staple of cotton on cover months in Liverpool, but I would not cover this cotton without instructions from Bain & Warley. * * * If I had received that telegram to cover from Bain & Warley, I would have sold an equal number of bales at the opening on the Liverpool cotton exchange the next morning, thus determining the price that I was to pay Bain & Warley. The price which Bain & Warley should receive for the cotton was fixed by the agreed upon number of points on the cover which we received in Liverpool the next morning. In other words, the agreed upon number of points added to the cover which we received from our Liverpool house the following morning. * * * Should I have received the message reading, 'Bought 800 bales, cover and report early,' I should have cabled to Liverpool, 'Cover 800 bales; Bain & Warley.' I would have cabled that Friday night. If I had cabled to that effect, Liverpool would have replied, 'Have sold 800 bales' at whatever the opening price was the next morning. * * * The price which Bain & Warley would have received had I so cabled to Liverpool Friday night would have been fixed by the number of points referred to previously as agreed upon, added to the cover received from Liverpool. * * * Their price was fixed by the addition, in case the sale was covered or hedged, of a certain number of points to the market price of the futures at which the cover or hedge was made. In case the sale from Bain & Warley to my firm should not have been covered or hedged, the price was not fixed. Their price was not fixed until the hedge was sold in Liverpool. If they had wired me offering to sell me 1,000 bales of cotton, but not instructing me to cover or hedge it, they would leave the price unfixed until they should instruct me to cover. Until we get instructions from Bain & Warley to cover in Liverpool, the price is not fixed, as far as Cunningham & Henshaw are concerned. I mean the price that Cunningham & Henshaw would pay Bain & Warley. * * * I

intended to testify to the fact that the price is fixed by the sale of cotton futures plus the number of points contracted for with Messrs. Bain & Warley, which differ according to grade and staple. When such futures were bought or sold by Cunningham & Henshaw on the Liverpool market, they acted in that matter for themselves, under instructions from Bain & Warley. * * * Such transactions as these, where futures are sold, as in this instance, are simply 'hedging' propositions. Cunningham & Henshaw contract to buy so much spot cotton at a specified price, and then sell futures to protect themselves against a fall in the market. * * * When the spot cotton is sold in Liverpool, the 'hedges' are bought in. * * * The settlements on these futures are made weekly, according to whether the market advances or declines, and when the spot cotton, to protect which these futures were sold, arrives in Liverpool, and is sold, then the futures are bought in. I do not know of any instances in which such future contracts so bought by Cunningham & Henshaw at the instance of Bain & Warley were settled by the receipt or delivery of any real cotton."

It appears from the evidence that on September 22, 1911, plaintiffs had on hand 800 bales of cotton, which they desired to sell to Cunningham & Henshaw in accordance with the existing agreement, and, in pursuance thereof, plaintiffs on said day delivered to the defendant Telegraph-Cable Company, at its office in the city of Houston, for transmission and delivery to said Cunningham & Henshaw at their Dallas office, a message in the following language: "Bought 800 bales, cover and report early." This message was changed in transmission, so that when it was delivered to the addressee it read as follows: "Bought 800 bales, come and report early." It was shown that the price of cotton for October-November deliveries on the Liverpool exchange on Saturday, September 23, 1911, was 11.44 cents per pound, that on Monday, September 25th, the price was 11.38 cents per pound, and on Tuesday, September 26th, it was 11.14 per pound; that, had the telegram been correctly transmitted, Cunningham & Henshaw would have "covered" on Saturday, September 23d, and the price which plaintiffs would have received for the 800 bales would have been 11.44 cents per pound, but, by reason of the incorrect transmission, the cover was not made until Tuesday, the 26th, when the price was 11.14, whereby plaintiffs lost $1.50 on each bale sold. When plaintiffs learned on Saturday that the telegram had been incorrectly transmitted, they "covered" or hedged by buying futures on the New Orleans market, whereby they made $510, which was deducted in the judgment from the losses sustained by them by reason of the cotton not being covered by Cunningham & Henshaw on Saturday. Bain & Warley, the appellees, were not interested in any way in the purchase of futures by

Cunningham & Henshaw as a hedge against spot cotton appelles sold them, further than to have the price they should receive therefor fixed.

[1] Appellant contends that, as the dealings in futures where there is no intention of making actual delivery are against public policy and illegal, one who negligently prevents the consummation of such illegal act cannot be held liable for any damages that may result from the failure of the illegal transaction to result in profit. In other words, applying the principle to the facts of this case, the negligent failure of appellant to correctly transmit the telegram which resulted in damages to appellees is not actionable, because the telegram was sent in furtherance of, or to aid in, a transaction which was illegal; and cites many cases in support of this contention. If it be conceded that the selling of cotton for future delivery, where it was not contemplated that any cotton should be actually delivered, or, in other words, dealings in futures, such as the transaction attacked in this case was shown to be, was in violation of the laws of this state or contrary to public policy, then appellant's contention is unquestionably correct. Articles 536 and 539 of the Penal Code prohibit the dealing in futures in this state; and under this statute a purchase of cotton to be delivered in future, when it was not the bona fide intention of the purchaser at the time of the transaction that the cotton should be delivered, is expressly prohibited. But it is, only to such transactions as are to be performed within this state that the statute applies, for, by article 543, Penal Code, it is expressly provided that it may be shown in defense of any prosecution for violation of this law that the transaction out of which such prosecution arose was a hedging contract between the parties in this state and a party or parties without this state. By "hedging" contracts, as we understand them, is meant that, where a party buys a given number of bales of cotton at the price current on the date of purchase, and sells an equal number of bales for future delivery, or "futures," he thereby protects himself against loss due to fluctuation in the market, for, if the price of cotton goes down he gains on futures, and if prices advance, he loses on futures, but, in either event, he is secure in the profits he has gained on the price of the cotton at the time he purchased it. In common parlance, he sells futures to hedge against loss in the purchase of spots. These hedging contracts are not permitted by law to be made within this state, but are excepted by article 543, where the transaction is between a party in this state and a party without this state; hence, as we construe the law, it was not illegal for Cunningham & Henshaw, doing business in this state, to hedge against loss on cotton bought by them in this state by the sale of futures in Liverpool, and, this being true, the act of appellees in advising them by telegram to cover was not in furtherance of a transaction denounced by our laws. It cannot be said to be in violation of public policy, because the Legislature has declared the public policy of this state in that regard by expressly exempting from prosecution parties engaged in such transactions.

By their third proposition under the first assignment of error, appellant contends that the "undisputed evidence showing that the profits of appellees on the New Orleans transaction was $510, that their loss up to the opening of the Liverpool market on Monday, September 25, 1911, was $240, and that by the terms of the contract between them and Cunningham & Henshaw appellees' price could be fixed only by a cover on the Liverpool exchange, which could have been effected on Monday's opening by a cable sent at any time on Saturday, September 23, 1911, after appellees learned that the message had not been transmitted as they intended; the negligence of appellant, if any, as alleged by appellees, could not, as a matter of law, have been the proximate cause of any loss suffered by appellees after Monday, September 25, 1911, and the loss, if any, suffered by them up to and before that time had been more than balanced by the profits they made in the New Orleans transaction; and appellees consequently had suffered no legal damage up to the date last mentioned, and the peremptory instruction in favor of appellant should have been given to the jury."

Bardswell, the Dallas agent of Cunningham & Henshaw, testified that when he received appellees' telegram saying that they had bought 800 bales, "come and report early," they replied by telegram as follows: "Yours received. We confirm 800 on call." This witness explained that by "We confirm 800 on call" was meant that the price would not be fixed without instructions from appellees. "That is a technical phrase signifying that I had no instructions to cover, and would not cover, and so would not fix their price until I did receive further instructions to cover." Appellees discovered on Saturday, September 23d, that the telegram had been incorrectly transmitted, and that their price had not been fixed by a cover on the day before, when they at once covered on the New Orleans market, and out of this transaction they made $510, and that they did not have time on Saturday, after they learned that the cover had not been made, to cover in Liverpool before the close of the cotton exchange on that day, and that on the next day, Sunday, the exchange was not open, so that a cover could not be made on that day, but that on Monday morning at 9:10 o'clock a cablegram was sent to Cunningham & Henshaw, at Liverpool, to make the cover, but, on account of a storm on the ocean which interfered with the workings of the wires, the cablegram did not reach them until after the close of the exchange on that day. The dif-

ference in time in Liverpool and Texas is about six hours, so that at 9:10 a. m. in Texas it would be 3:10 p. m. in Liverpool. The testimony does not show at what hour the Liverpool cotton exchange closed for the day, or, if it does, the evidence is not pointed out in appellant's brief. The evidence shows that the loss appellees would have sustained had the cover been made on Monday was $240. If appellees had caused the cablegram to be sent on Saturday, the cover would have been made on Monday at the opening of the cotton exchange. Ordinarily a cablegram can be sent from Houston or Dallas to Liverpool and an answer received in 10 or 15 minutes. Sometimes the dispatch may be sent and answer received in less than 6 minutes. The point made by the assignment now under discussion it that appellees were guilty of negligence, as a matter of law, in waiting until Monday to send the cablegram to cover instead of sending it on Saturday. As before stated, the evidence does not show the hour the exchange closed on Monday, but, assuming that it closed at 4 o'clock, appellees had 50 minutes from the time the cablegram was sent and before the exchange closed to cover on that day, and ordinarily this could have been done in 10 or 15 minutes, or possibly a shorter time. That the cablegram sent at 9:10 a. m. did not reach Liverpool in time was due to no fault on the part of appellees.

[2] We cannot say, under these facts, that appellees were guilty of contributory negligence, as a matter of law, in not sending or causing the cablegram to be sent on Saturday. The testimony was sufficient to raise the issue of such negligence, and the determination of the issue by the jury is conclusive upon us.

By its fourth proposition under the first assignment, appellant contends that appellees were guilty of contributory negligence, as a matter of law, in writing the telegram to Cunningham & Henshaw so that the message could as easily be read "come" as "cover." If the word in question as written by appellees in the telegram looked as much like "come" as it did like "cover," appellees might be held to be guilty of negligence, as a matter of law, in so writing it. The original message is sent up with the record in this case, and from an inspection of it the word appears to be "cover" and not "come." It would be a careless reader indeed who would pronounce it "come." The first assignment and the several propositions thereunder are overruled.

There is no merit in the second assignment of error, which complains that the tenth paragraph of the court's charge is upon the weight of the evidence and misleading in the several particulars pointed out in the propositions asserted thereunder, and the assignment is overruled without further comment. Nor does the third assignment point out re-

versible error, and it and the several propositions thereunder are overruled.

In the eleventh paragraph of the court's charge, the jury was instructed as follows: "In this connection you are further charged that, if you find for plaintiffs, and further find that in the exercise of ordinary care plaintiffs could and would have procured their 800 bales of cotton to have been covered, or the price fixed upon the opening of the Liverpool cotton exchange on Monday, the 25th of September, 1911, then your verdict will be for the plaintiff in an amount equal to the difference between the opening price on the Liverpool Cotton Exchange on Monday, September 25, 1911, and the opening price on said exchange on the Saturday preceding, less such sum they received in protecting themselves from loss."

It is complained in the fourth assignment of error that the giving of this charge was reversible error, because the jury were thereby instructed that, in the event they thought ordinary care required appellees to have the cover sold on Monday, they should find for appellees in a sum equal to $240 less $510.

Appellant requested the court to charge the jury as follows: "If you believe from the evidence that the plaintiffs are not entitled to recover more than the difference between the opening of the Liverpool market on Saturday and the opening thereof on Monday, the profit of plaintiffs in New Orleans wipes that out, and you should return your verdict for defendant." The refusal to give this charge is made the basis of appellant's fifth assignment of error.

[3] It seems to have been assumed by both parties on the trial that appellant was entitled as a credit on the amount of damages its failure to correctly transmit the telegram has caused the appellees by the amount appellees profited by its cover in New Orleans. Assuming that it was entitled to this credit, for this is a matter we are not called upon to decide, we think the court, instead of telling the jury that, in the contingency stated in the charge, the appellees would be entitled to recover the difference between opening price at Liverpool on Monday and the opening price on the Saturday preceding, less such sum they received in protecting themselves, should have instructed them that in such contingency to find for defendant. The testimony shows that if the cover had been made on Monday appellees' loss would have been $240, and that appellees had protected themselves by cover in New Orleans, wherein they gained $510. If their loss would have been $240, and their gain $510, it was not possible to subtract the latter from the former.

[4] We cannot see, however, that this charge was so misleading and prejudicial as to require a reversal. Certainly the jury could not understand that after the subtraction of a greater from a lesser sum, which

cannot be done, there would be a balance for which a judgment should be rendered. The special charge was a proper one to be given under the facts, but the error in not giving it is cured by the verdict, for it is clear that the jury did not find appellees guilty of negligence in failing to make the cover on Monday, but based their verdict on the price of futures on the opening of Liverpool cotton exchange on Tuesday. They must have believed and found, therefore, that appellees were not guilty of negligence in failing to make the cover on Monday, and, this being true, the giving of the special charge would have availed appellant nothing. The assignments are overruled.

We have examined the remaining assignments of error urged by appellant, and are of the opinion that none of them points out reversible error. We conclude that the judgment should be affirmed, and it has been so ordered.

Affirmed.