P. T. TALBOT & SON v. MARTINDALE. (No. 6203.)

(Court of Civil Appeals of Texas. San Antonio. April 16, 1919.)

1. APPEAL AND ERROR ⬦⟿742(2) — BRIEFS —GROUPING OF ASSIGNMENTS OF ERROR.

Assignments of error, two challenging the court's ruling on exceptions to defendant's averments of the contract's illegality and certain oral undertakings, and one as to the admission of parol evidence in regard to the oral contract, being matters involving different propositions of law, were improperly grouped together and cannot be considered.

2. APPEAL AND ERROR ⬦⟿742(1)—STATEMENT UNDER ASSIGNMENT.

An assignment of error, which does not contain a statement after the propositions under it, as required by court rules for the preparation of briefs, will not be considered on appeal.

3. EVIDENCE ⬦⟿437 — PAROL EVIDENCE SHOWING ILLEGALITY OF CONTRACT.

Parol evidence is admissible to show that a contract for the sale of cotton, regular on its face, is in reality a contract to deal in cotton futures, and therefore illegal and unenforceable.

4. GAMING ⬦⟿12—SALES FOR FUTURE DELIVERY—ACTION FOR DAMAGES OF CONTRACT —ILLEGALITY.

Where the intention of the parties in a contract for the sale of cotton was that no actual cotton should ever be delivered by the vendor or received and paid for by the vendee, the contract is illegal under Pen. Code 1911, arts. 536, 539, prohibiting dealing in cotton futures.

Appeal from District Court, Hays County; M. C. Jeffrey, Judge.

Suit by P. T. Talbot & Son against W. W. Martindale. From a judgment for defendant, plaintiffs appeal. Affirmed.

Thos. J. Saunders, of San Marcos, and E. B. Coopwood, of Lockhart, for appellants.

R. E. McKie, and E. M. Cape, both of San Marcos, for appellee.

COBBS, J. This suit was brought in Hays county by appellants against appellee to recover the sum of $2,578.12 as damages on account of the alleged failure of the appellee to deliver cotton as per an alleged agreement.

The written agreement between the parties is as follows:

"The State of Texas, County of Hays.

"Know all men by these presents: That we, P. T. Talbot & Son of San Marcos, Texas, hereinafter known as the party of the first part, and W. W. Martindale, of San Marcos, Texas, hereinafter known as the party of the second part, witnesseth:

"The party of the first part buys from the party of the second part (75) seventy-five bales of cotton and agrees to pay to the party of the

⬦⟿For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

second part (20) twenty cents per lb. Basis Midd.

"Delivery of the seventy-five bales of cotton can be made at any time between the first of September and the 25th of October of this year and the differences between grades are to be those prevailing at the time of delivery.

"Compress weights and class are to govern the settlement of this contract and it is further understood and agreed that the average weight of the cotton shall be between 500 lbs. to not more than 530 lbs. to the bale."

"Signed in duplicates this the 25th day of May, 1917. Party of the First Part: P. T. Talbot & Son. Party of the Second Part: W. W. Martindale."

The defense of the appellee was that there was no consideration for the execution of said contract, save and except the mutual risk of loss ventured by the parties thereto; was executed in pursuance of the business of dealing in futures, and was a wagering or gambling transaction only, and without valid or legal consideration. Further, that the contract declared upon by appellants did not completely and fully state the entire understanding and agreement between the parties in that said contract on its face purported to be a sale for future delivery, but in truth and in fact it was never intended or contemplated by the parties thereto or either of them that any actual cotton should ever be delivered by appellee or received and paid for by appellants, but contemplated and understood any time between September 1 and October 25, 1917, appellee should have the right to demand a settlement under said contract, and that settlement would be made, based upon the market street price of cotton at San Marcos, and, if said market street price upon the date on which settlement was demanded should be less than 20 cents per pound, then appellants should pay appellee the difference in money, and, if said market street price should be more than 20 cents per pound, that appellee should pay appellants in money the difference. That no actual cotton was delivered. The difference between contract price was to be settled in money. That this contract was illegal and void.

Appellee further averred at one time the market price of cotton on the streets of San Marcos was less than 20 cents per pound, and that on said date he went to appellants and demanded that the contract be closed without loss, or gain, but appellants misstated to him the market price of cotton, and thereby prevented the closing of the contract without gain to either.

This case was tried with a jury. Defendant requested an instructed verdict not given, and also requested special issues, and they were given. But no issues were requested to be submitted by appellants. The court submitted the case upon two special issues and upon certain other special issues requested by defendant.

[1, 2] Appellants group the first three assignments together. The first challenges:

The ruling of "the court in not sustaining special exception No. 5, wherein the defendant sets out the illegality of the contract; and, second, that the court erred in not sustaining plaintiffs' exception to all that portion of defendant's answer setting up the oral statements and understandings, etc., not in the written contract; and, third, in permitting the defendant to testify certain oral understanding before the jury," etc.

The appellee objects to their consideration: First, because they are improperly grouped, two relating to matters of pleading and one relating to the admission of testimony involving different propositions of law; second, because there is no statement appearing after the propositions under said assignment as is required by court rules for the preparation of briefs. An inspection of the brief shows these objections well taken, and they are sustained, and we refuse to consider assignments 1, 2, and 3 as such.

Appellants' fourth, fifth, and sixth assignments are subject to the same objection and ought not to be considered; but as their first proposition raises all the questions of law necessary for the decision of the case on its merits, and has a partial statement, we will consider it, and by so doing practically pass upon all the questions raised. The proposition, in effect, and appellants' contentions, are, the contract being on its face valid for delivery of cotton at a certain time, the defendant could not show that at the very time of entering into such written contract, or at any other time, he and the plaintiffs entered into an oral contract in which it was agreed that the written contract should be settled by the payment of differences in the market price on the day of the settlement and the contract price instead of an actual delivery of the cotton as provided in the written contract, and none of these contentions could be established by oral testimony.

To reduce this case to its final analysis, Was the contract apparent on its face a complete and valid contract, or was it intended at its making to be the basis of an agreement to engage in dealing in what is commonly known as "futures," which is prohibited by law, and, although there is nothing on its face to so show, may it nevertheless be shown by parol evidence, its illegality?

[3] Appellants' contention seems to be there are two separate contracts. The first one. was the written contract, and the second, that the written contract should be settled by the payment of differences, and relies on Elliott's Contract, vol. 3, § 1863; Rice Co. v. Stubbs, 137 S. W. 154. There is no question but what that would be a sound proposition of law if it were that kind of a case. Generally speaking, parol evidence is not permissible to change or vary the terms of a written con-

tract; but there are exceptions to that rule. While the written contract may not be ambiguous, or show on its face its invalidity, yet if made through fraud or mistake, or is illegal, or when, though regular on its face and so made that its undisclosed real purpose was to deal in cotton futures, parol evidence is admissible to establish the real intention of the parties.

In Smith v. Bowen, 45 Tex. Civ. App. 224, 100 S. W. p. 797, the court says:

"The rule that a written instrument sued upon cannot be varied or contradicted by proof of a contemporaneous parol agreement does not apply in cases of this character. If the consideration, or one of the considerations, upon which the transaction is based, is illegal, it may be shown by parol testimony. Wiggins v. Bisso, 92 Tex. 222, 47 S. W. 637, 71 Am. St. Rep. 837; Reed v. Brewer. 90 Tex. 149, 37 S. W. 418; Sanger v. Miller, 62 S. W. 425, 26 Tex. Civ. App. 111."

"It has been often said the test whether a cause of action connected with an illegal transaction can be enforced at law is whether the plaintiff requires any aid from the illegal transaction to maintain his case. While this is a correct rule, it may not go far enough" when relief would be refused on account of illegality of contracts. Read v. Smith, 60 Tex. 382.

[4] Penal Code 1911, art. 536, prohibits the dealing in futures of cotton, etc., and article 539 includes within that designation the purchase of cotton to be delivered in the future without the intention of the purchaser that the cotton should be delivered.

It is no longer an open question in this state that all contracts are wagering contracts, for the sale and future delivery of cotton, likewise of commodities where no actual delivery was intended and the difference to be adjusted by the payment in money between the market and contract price, at the delivery date named.

Mr. Associate Justice Stayton, in Seeligson v. Lewis & Williams, 65 Tex. p. 220, 57 Am. Rep. 593, in quoting with approval from the rule established by the Supreme Court of the United States, in the absence of a prohibitory statute, said:

"* * * And if, under guise of such a contract, the real intent be merely to speculate in the rise or fall of prices, and the goods are not to be delivered, but one party is to pay the other the difference between the contract price and the market price of the goods at the date fixed for executing the contract, then the whole contract constitutes nothing more than a wager, and is null and void."

To the same effect is the holding in the following cases: Oliphant v. Markham, 79 Tex. 547, 15 S. W. 569, 23 Am. St. Rep. 363; Burney v. Blanks, 136 S. W. 806; Merriman Williard Co. v. Cole, 198 S. W. 1057; Mackay Telegraph Cable Co. v. Bain, 163 S. W. 98.

This case was submitted on special issues at the request of the defendant, and the court submitted to the jury only two special issues, Nos. 1 and 2, and they are as follows:

No. 1. "At the time of making and entering into the written contract sued on, did the plaintiffs, P. T. Talbot & Son, intend and contemplate an actual delivery of the seventy-five bales of cotton by the defendant, W. W. Martindale?"

No. 2. "At the time of making the contract sued on, did the plaintiffs, P. T. Talbot & Son, know or have reason to believe that the defendant, W. W. Martindale, did not intend an actual delivery of the cotton?"

To question No. 1, the jury answered, "No." and to question No. 2, they answered, "Yes."

The defendant also requested a number of special issues, which were given, as follows:

"Requested Special Issue No. 1. In making the contract sued upon, did the parties thereto intend or contemplate that an actual delivery of cotton should be made by defendant to plaintiffs? You will answer, 'Yes,' or, 'No.' Answer: No.

"Requested Special Issue No. 2. Was the contract and agreement between plaintiffs and defendant in reality a contract by which the defendant had the privilege of not delivering the cotton, but had the right or option to either deliver said cotton or settle said contract by paying or receiving the difference between the contract price and the market price at San Marcos on the day of settlement? You will answer, 'Yes,' or, 'No.' Answer: Yes.

"Requested Special Issue No. 3. In the event you have found upon the issues submitted to you that plaintiffs and defendant only contemplated or intended an actual delivery of the cotton mentioned in said contract as the only means of settling upon difference between the market price and contract price at date of settlement, then you will answer the following question: Did plaintiffs and defendant at any time after the making of said contract (so as to) give defendant the option or right to settle said contract by paying or receiving in money the difference between the market value of cotton in San Marcos on the date of settlement and the contract price? You will answer, 'Yes,' or, 'No.' Answer: ———.

"Requested Special Issue No. 4 (a). Did the defendant, W. W. Martindale, on September 8, 1917, go to the place of business of plaintiffs and request plaintiffs to cancel said contract without loss or gain to either party? You will answer, 'Yes,' or, 'No.' Answer: Yes.

"(b) At the time that defendant requested plaintiffs to cancel said contract, was the street market price in San Marcos for basis middling cotton 20 cents per pound or less? You will answer, 'Yes,' or, 'No.' Answer: Yes.

"(c) Did the plaintiffs or either of them, at the time defendant requested them to cancel said contract, misstate the market price of cotton to said defendant? You will answer, 'Yes,' or, 'No.' Answer: Yes.

"(d) Was defendant misled by said statement and thereby prevented from closing his contract? You will answer, 'Yes,' or, 'No.' Answer: Yes."

The findings of the jury in answer to the first issue submitted by the court was to the

effect that at the time of execution of the contract P. T. Talbot & Son did not intend and contemplate the actual delivery of the 75 bales of cotton by W. W. Martindale; and, in answer to the second, that plaintiffs knew defendant did not intend an actual delivery of the cotton.

To the second special issue, given at defendant's request, the jury answered, to the effect that defendant had the right and option to deliver cotton or settle said contract by paying or receiving the difference between the contract price and the market price at San Marcos on the day of settlement.

From the view we take of this case we do not think it necessary to refer to any other of the special issues.

There is enough testimony to support the verdict of the jury. We believe the testimony shows that the contract, though on its face free from vice, is drawn with studious care so as to appear valid and escape its illegal purpose; but the evidence properly admitted discloses that when that contract was entered into it had, with the mental reservation of the parties, all the elements of an unsound, invalid contract, and not enforceable. The parties did not contemplate or intend for a single moment that any actual cotton should ever be delivered by the defendant or received and paid for by plaintiffs, and that, any time between September 1st and October 25th, the defendant should have the right to demand a settlement, and be paid in money based upon the market street price of cotton in San Marcos, and the difference between them on date of settlement, thus to do that which the law prohibits and regards illegal. This is the view the jury took of it, and their findings will not be disturbed.

It will be seen from what we have said that we have in fact considered every phase of the case and all the assignments of error, and they are severally overruled.

We find no substantial error assigned that calls for a reversal, and hence this case is affirmed.