## WARE v. BURLESON et al.
### No. 3545.

Court of Civil Appeals of Texas. Amarillo.
April 22, 1931.

Rehearing Denied May 13, 1931.

T. Wade Potter and Bills & Hazel, all of Littlefield, for appellant.

Lockhart, Garrard & Brown, of Lubbock, for appellees.

JACKSON, J.

J. W. Ware, the plaintiff, instituted this suit in the district court of Lamb county, Tex., against the defendants F. M. Burleson and B. M. Willingham, to recover $1,250, with interest and attorney's fees thereon, evidenced by a promissory note executed by the defendant and payable to the order of J. W. Ware & Co., a copartnership.

The plaintiff alleges that he has acquired the note from the copartnership and is the legal and equitable owner, thereof. The allegations of his petition are sufficient to authorize a recovery on the note, interest, attorney's fees and costs.

The defendant F. M. Burleson answered by general demurrer, special exceptions, and general denial.

He pleaded failure of consideration, and alleged that in the fall of 1924 J. W. Ware & Co. were dealing in cotton futures in New Orleans, and maintained an office and agent for their business in Lubbock, Lubbock county, Tex. That he and his codefendant were engaged in buying and selling spot cotton, and that J. W. Ware & Co. were acting as brokers for those who desired to buy or sell future contracts, or what is commonly known as cotton futures. That the defendants purchased through the plaintiff, as brokers, contracts for the sale and purchase of cotton futures. That the note was executed to cover a balance which the plaintiff claimed that the defendants owed by reason of the purchase and sale of cotton futures. That none of the parties to the transactions understood or contemplated that there would be any actual delivery of the cotton sold or acceptance of the cotton purchased. That all of such contracts constituted wagers, schemes for gambling, and were illegal; that the note was given to cover margins on the future cotton market and was not given for any cotton actually delivered or intended to be delivered. That all of such transactions were void under the laws and decisions of the state of Texas and of the United States, against good morals and public policy, and unenforceable.

No service having been had on B. M. Willingham, on motion of the plaintiff he was dismissed from the case.

The case was submitted to the court without the intervention of a jury, and he rendered judgment that plaintiff take nothing by his suit, and that defendant go hence without day with his costs, from which judgment this appeal is prosecuted.

The appellant, by numerous assignments, all of which we will consider together, assails as error the action of the trial court in rendering judgment against him, because of the insufficiency of the testimony to support the findings of the court.

The court found, in effect, that the transactions with the defendants were handled by the agent of J. W. Ware & Co., at Lubbock, Tex.; that J. W. Ware & Co. received the orders and the defendants sent the orders with no intention or agreement for the actual delivery of the cotton sold or bought; that it was not the intention of either of the parties to any of the transactions that the purchase and sale of the cotton should be consummated by actual delivery; that none of the parties had any facilities for handling the cotton, and that it was the intention of all the parties that the profits and losses should be determined by the fluctuations of the market; that settlement should be made upon the basis of the market quotations at the New Orleans cotton exchange; that the note was given in settlement and as a continuation of gambling transactions in cotton futures; and that the defendants received no consideration for the execution and delivery of the note.

Mr. Keno, Jr., the office manager of J. W. Ware & Co., during the time the transactions were had with the defendants, testified that the company was a member of the New Orleans cotton exchange and cotton brokers engaged in selling and buying cotton futures for their customers. That they required a deposit of their customers of $5 to $10 per bale to protect fluctuation in prices. That they extended to the defendants credit on account

for the sum of $1,000; that, when the account reached that sum, they demanded more margin, and the defendants gave the note sued on to J. W. Ware & Co. instead of paying cash. That the note represents a margin for the fluctuation on future contracts. That a round contract means a purchase and sale of one hundred bales. That the defendants made eight round contracts. That there had to be "two contracts all the time, one buying and one selling." That the defendants bought eight hundred bales and sold eight hundred bales, the total price of which was, roughly, $176,000. That when a customer bought an order he must sell to get out. That the defendants never knew from whom they bought nor to whom they sold. That no actual cotton was received by the defendants and none delivered by them, because they did not have cotton on "tenderable" days. That, when the defendants ordered one hundred bales sold for future delivery, they would on that day, or in three or four days, buy one hundred bales, which closed the deal, and J. W. Ware & Co. did not contemplate delivery in such transactions. That such purchases and sales between the plaintiff and the defendants continued from October 20, 1924, to December 15th thereafter. That during that time the defendants bought and sold contracts covering sixteen hundred bales of cotton. That "these contracts were all to be settled on the basis of whether cotton had gone up or down and were settled according to whether or not they gained or lost on the transactions." If the price went up, more money had to be put up. If it went down, the defendants would collect if they wanted the money and not the cotton. That after all the deals for the purchase and sale of cotton had been closed, the note sued on was given. That J. W. Ware & Co. handled the contracts personally. That the orders were sent from Lubbock by their salesman, Mr. Denman, who was running the office at Lubbock, and some of the orders were signed by Willingham and some by Burleson and Willingham. That he presumed that J. W. Ware & Co. handled thousands of bales during that season from Lubbock, Tex. That the company contemplated the delivery of the cotton bought and sold by the defendants.

Mr. Burleson testified that, during the time of the purchase and sale of cotton future contracts by him through J. W. Ware & Co., the company was operating an exchange in Lubbock. That he understood they were cotton brokers in New Orleans. That he had some transactions with them in the Fall of 1924, buying and selling futures on the New Orleans cotton exchange. That it was what is commonly known as "bucking the board"; "lose today and win tomorrow." That the purchases and sales were handled by wire. That a telegram would be sent to J. W. Ware & Co., New Orleans, with the request to either buy or sell on the exchange. That Mr. Denman sent the wires as a rule out of the building there in Lubbock. That Denman had a Western Union wire out of the building. That he would give the orders to Sam Denman, and he would send them. That he had been buying and selling cotton futures for twenty years and that he never did deliver or accept a bale of cotton. That it was not his intention in making these contracts to deliver or receive the cotton that was contracted for. That he was not financially able to accept spot cotton, and could not handle it. That he did not have the money or the facilities or the credit to handle that much cotton. That it is customary to place a margin up when you make a contract. That he never received anything of value for the note, as it was given in settlement of the future contracts for the purchase and sale of cotton given to cover the margins placed on the contracts. That the note was for the loss that was sustained in the transactions of purchase and sale. That J. W. Ware & Co. were not buying and selling cotton for him on the New Orleans cotton exchange. That it was simply a purchase and sale of future contracts. That if he had been called on to deliver the cotton he would not have had to deliver it. That they did not expect him to deliver the cotton. That when he bought one hundred bales on the market, the way he got out was to sell one hundred bales and balance one against the other. That that was the invariable rule. If you won, they would pay you money, if you lost, you paid them.

■■ There are many other facts and circumstances in the record tending to support the findings of the trial court, but we deem it unnecessary to go into the testimony in greater detail. If there is sufficient testimony to support the conclusion of the trial court, we are not authorized to disturb it; and, in our opinion, the testimony is sufficient to warrant the findings of the court.

The law seems to be definitely settled against appellant's contention in the case of Allen v. Denman, and the authorities therein cited by Chief Justice Hall, reported in (Tex. Civ. App.) 278 S. W. 899.

The judgment is affirmed.