### ERWIN v. WHITE.
### No. 3906.

Court of Civil Appeals of Texas. Amarillo.
Nov. 16, 1932.

Rehearing Denied Dec. 14, 1932.

Cooper & Lumpkin, of Amarillo, for appellant.

S. E. Fish, of Amarillo, and J. S. Stallings, of Claude, for appellee.

JACKSON, J.

The appellant instituted this suit in the district court of Armstrong county against the appellee, H. E. White, to recover an unpaid balance on the purchase price of 7,666⅔ bushels of wheat alleged to have been purchased by appellee from appellant.

The appellant pleads, in substance, that in 1931 between July 3d and 18th, he sold and delivered to appellee at his elevator in Washburn the wheat, and that appellee promised to pay the market price therefor under the Chicago December option on any day before December 1, 1931, upon which appellant demanded a settlement. That appellee was to advance the appellant 15 cents per bushel and charge 1 cent per bushel for handling. That appellee issued receipts or scale tickets on which was stamped the following provision: "This wheat is sold to us at ——¢ under the Chicago Dec. option and seller may call for settlement any day after the close of that day's market on or before Dec. 1, 1931." That in the blank in the tickets covering 1,-764½ bushels was written "$0.33"; that in the blanks in the tickets covering 2.906.66 bushels was written "$0.32"; and that in the tickets covering the remainder, the price was "$0.31." That on or before July 18th the appellee advanced the appellant 15 cents per bushel, or $1,150, for which appellant executed and delivered his promissory note to appellee, bearing interest at the rate of 8 per cent. per annum and payable on demand. That on November 12, 1931, wheat was worth, under the Chicago December option, 63½ cents per bushel, and on said date appellant demanded of appellee a settlement and the balance due him for his wheat, and that appellee failed and still refuses to pay said balance or any part thereof. The appellant credited appellee with interest on the note and the 1 cent per bushel for handling charges, claiming a balance due of $1,514.95, with interest at the rate of 6 per cent. per annum.

The appellee answered by general demurrer and general denial, admitted that he contracted with appellant to purchase his wheat substantially as alleged in his petition, but pleaded that the wheat was sold and purchased on a basis of 60 pounds to the bushel, with the usual and customary dockage for inferior grades, and that appellee did not agree to advance appellant any money until settlement was demanded under the terms of the contract, and that the amount of wheat purchased was only 6,388.75 bushels. He states the number of bushels that tested inferior and the amount of dockage for which he was entitled to credit.

He pleads as a defense that on the 18th day of July after the delivery of all the wheat, appellant desired an advance of cash on the wheat not contemplated in the original contract, and thereupon the parties entered into a new contract canceling and annulling the original contract, and by the terms of the second contract appellee agreed to advance appellant 15 cents per bushel on the 6,388.75 bushels, with the understanding that appellee, as appellant's agent, would buy this number of bushels upon what is known as the Board of Trade and hold for appellant's benefit. That it was expressly agreed between the parties that there was a 10-cent per bushel margin on the wheat on the 18th of July, and that in the event the price on the Chicago December option should decline and consume this 10 cents per bushel margin, that if appellant desired to protect the purchase on the Board of Trade he was to advance such additional sums as were necessary to protect the margin, and that in compliance with the terms of the last-mentioned agreement the appellee did buy on the Board of Trade said amount of wheat for appellant as his agent. That appellee advanced appellant on and before July 18th $1,150, for which the note, payable on demand, was executed; but that by reason of a mistake the number of bushels was estimated at 7,666.66 bushels, when in truth and in fact there was but 6,388.75 bushels. That on the 5th day of October, 1931, the price of wheat, Chicago December option, declined to below 45 cents per bushel, and the 10 cents per bushel margin in the wheat was thereby consumed. That appellee notified appellant thereof and advised him that if he desired to advance additional margin that appellee would go ahead and purchase the wheat for appellant; that at the same time he delivered to appellant the $1,150 note, which he accepted, and the transaction was thereby closed.

By supplemental petition the appellant excepted generally and specially, because the contract alleged by appellee represents a wagering transaction and is void; that a void contract cannot supersede a valid contract; that it did not appear that it was contemplated that any wheat bought on the Board of Trade should be delivered.

Numerous special issues were submitted to the jury by the court, but their findings on those necessary to a disposition of this appeal are, in substance, that in July the appellant sold to appellee 6,388.75 bushels of wheat at a price to be determined under the Chicago December option on any day before December 1, 1931, upon which appellant demanded a settlement; that 1 cent per bushel was to be charged for handling, and while appellee did not agree in the original purchase to do so, he did advance to appellant $1,150; they found the number of bushels at the price of 33 cents, the number at the price of 32 cents, and the number at the price of 31 cents under the December options. That on November 12th the appellant demanded a settlement, on which date the Chicago December option on wheat was 61½ cents; that appellee refused to settle; that the wheat was sold

on a basis of 60 pounds to the bushel, subject to a dockage of 1 cent per pound per bushel for inferior grades. That on July 18, 1931, the parties entered into a new contract by the terms of which the original contract was canceled and annulled in consideration that appellee was to carry on the Chicago Board of Trade 6,388.75 bushels of wheat for appellant and to use the difference in the amount paid appellant and the value of the wheat, or 10 cents per bushel, as margin if the price declined; that the price did decline more than 10 cents per bushel before December 1st, and appellee advised appellant thereof and that additional money was necessary to protect the margin, but appellant failed to make any additional advance. That in the purchase of the wheat on the Board of Trade appellee was acting as agent for appellant.

On these findings judgment was entered that appellant take nothing by his suit and pay all costs incurred, and that appellee take nothing by his cross-action.

■ The original contract between appellant and appellee for the sale and purchase of the wheat was not a wagering transaction, as asserted by appellee. Smith v. Duncan (Tex. Com. App.) 209 S. W. 140, 141; H. Seay & Co. v. Moore (Tex. Com. App.) 261 S. W. 1013; Furrh v. Western Union Telegraph Co., 115 Tex. 125, 276 S. W. 645.

■ The appellant by several assignments urges that the alleged second contract relied upon by the appellee as a defense was a wagering contract under the law and was therefore void and did not annul and cancel the original contract.

The record discloses that the appellee purchased on the Board of Trade at Chicago, through the Henderson Grain Company of Amarillo and Fort Worth, at his risk, on different dates from July 1 to August 25, 1931, 50,000 bushels of wheat, Chicago December option; but it is not disclosed from whom the purchases were made. The appellee testified that when he purchased wheat on the Board of Trade he put up a certain margin and never expected the Board of Trade to deliver to him the wheat thus bought; that if the price went up he got the benefit of the rise in market, and if it went down he would have the loss of the decline in market.

Article 658, Penal Code 1925, provides: "Any contract of sale for future delivery of cotton, grain, stocks: or any other commodities where it is not the bona-fide intention of parties that the things mentioned therein are to be delivered but which is to be settled according to or upon the basis of the public market quotations or prices made on any board of trade, exchange, or other similar institution, 'without any actual bona fide execution and the carrying out of such contract upon the floor of such exchange, board of trade or similar institution, in accordance

with the rules thereof, shall be null and void and unenforceable in any court of this State, and no action shall be maintainable thereon at the suit of any party."

Article 661, P. C., is to the effect that any person as agent or principal who enters into or assists in making any contract denounced in the above article for the future delivery of commodities shall be guilty of a felony.

Prior to the enactment of the foregoing articles, the Supreme Court, speaking through Judge Stayton, approved the holding that where goods were not delivered and the real intent of the parties to the agreement was to speculate in the rise or fall of prices, one party to pay the other the difference between the contract price and the market price at the date fixed for the execution of the contract, the whole transaction is a wager and null and void. Seeligson v. Lewis & Williams, 65 Tex. 215, 57 Am. Rep. 593.

Since the above statutes were enacted by the Legislature, our courts consistently hold that contracts such as the one alleged by appellee, and found by the jury to have been made, are void and unenforceable. Logan v. Norris et al., 100 Tex. 228, 97 S. W. 820; Burney et al. v. Blanks (Tex. Civ. App.) 136 S. W. 806, writ denied; Allen v. Denman (Tex. Civ. App.) 278 S. W. 899; Hibbler v. Howe (Tex. Civ. App.) 295 S. W. 299; McDaniel v. Tullis, Craig & Co. (Tex. Civ. App.) 11 S.W. (2d) 203; Ware v. Burleson et al. (Tex. Civ. App.) 41 S.W.(2d) 338.

Appellee contends that the wheat he was carrying on the Board of Trade under Chicago December options was a hedging transaction and not in conflict with public policy or the Texas statutes. To sustain this position, he relies on two Texas authorities. Mackay Telegraph-Cable Co. v. Bain et al. (Tex. Civ. App.) 163 S. W. 98, and Lowrie v. J. N. Wisner & Co. (Tex. Civ. App.) 47 S. W.(2d) 636. An analysis of these cases will, in our opinion, disclose that the holdings therein are based on provisions of article 543 of the Penal Code of 1911, which provided, in substance, that it could be shown in defense that the transaction was a hedging contract. This article of the statute was repealed by article 663 of the Revised Penal Code, adopted in 1925.

The fact that appellee was acting as the agent of appellant in making the contract for the purchase on the Chicago Board of Trade would not relieve the contract of its illegality.

Article 661, supra, condemns such contracts whether made as agent or principal. "The law will not lend its aid to the enforcement of an illegal contract. If, therefore, the undertaking of the agent was to perform some act which was forbidden by law or which was opposed to the public policy, he can recover no compensation for the act, though it be fully performed according to the agreement." Me-

chem on Agency (2d Ed.) vol. 1, p. 1132. See, also, Allen v. Denman, supra.

The fact that appellee advanced to appellant $1,150 as a part of the consideration for the alleged new contract would not give validity thereto. If any part of the consideration of a contract is illegal, the contract is void whether the illegality arises from the common law or is prohibited by statute. Seeligson v. Lewis & Williams, supra; Edwards County v. Jennings et al., 89 Tex. 618, 35 S. W. 1053; Wicks et al. v. Comves et al., 110 Tex. 532, 221 S. W. 938.

If we are correct in holding that the new agreement alleged by appellee as a defense is void because illegal, the original contract was not cancelled or novated by such void contract.

"In every novation there are four essential requisites: (1) A previous valid obligation. (2) The agreement of all the parties to the new contract. (3) The extinguishment of the old contract. (4) The validity of the new one. This enumeration is frequently stated in the cases. If these essentials, or any one of them, is wanting, there can be no novation." 46 C. J. 578, § 11.

"A novation between the same parties requires the creation of a new obligation, but, in order to effect a novation, it is essential that this obligation be a valid and enforceable one. This is necessary, primarily, because the creation of the new obligation constitutes the consideration for the discharge of the original obligation, hence, if the new agreement is void, or otherwise unenforceable, it will invalidate the intended novation." Id., 594, § 36.

To the same effect is the holding in Davis et al. v. Wynne (Tex. Civ. App.) 190 S. W. 510, writ of error denied.

For the errors discussed, the judgment is reversed, and the cause remanded.