A T

## DES MOINES, MAY TERM, A. D. 1890.

IN THE FORTY-FOURTH YEAR OF THE STATE.

PRESENT:

HON. JAMES H. ROTHROCK, CHIEF JUSTICE.
HON. JOSEPH M. BECK,
HON. GIFFORD S. ROBINSON,
HON. CHARLES T. GRANGER, } JUSTICES.
HON. JOSIAH GIVEN,

---

## THE FIRST NATIONAL BANK OF CRESTON v. CARROLL *et al.*

**Gambling Contract:** NOTE GIVEN IN SETTLEMENT OF: INNOCENT HOLDER. Where A. had shipped cattle to Chicago to be sold upon the market, and, in consideration of money paid to B., the latter guaranteed that they would sell for four cents per pound, and agreed to pay A. the difference between four cents per pound and the price for which they sold, if they brought less than four cents; and A. also agreed to pay to B. whatever sum they should sell for over four cents per pound; and they sold for less than four cents, and B. made his note to A. for the difference, *held* that the agreement was a gambling contract, and that the note given in pursuance thereof was void, even in the hands of an innocent holder. (See *Traders' Bank v. Alsop*, 64 Iowa, 97.)

(11)

*Appeal from Union District Court.*—Hon. R. C.
Henry, Judge.

Filed, May 10, 1890.

Action on a promissory note for one hundred and
fifty dollars. The execution of the note is admitted, but
it is alleged to be void because given in fulfillment of a
gambling contract, of which the following is a copy:

"Creston, Iowa, December 5, 1888.
"In consideration of thirty dollars paid me this
day by L. J. Cusick, I hereby guaranty to him that
the five cars of cattle shipped by Cusick Bros., on
December 3, to Chicago, shall sell in Chicago for four
(4) cents per pound, and, he having a one-half interest
in said cattle, I agree to make good to him any loss
by reason of said cattle selling for less than four cents.
That is, I am to pay him the difference, if any, between
the price the cattle sell for and four cents on his
half interest, in case they sell for less than four cents.
Said difference to be paid to him on receipt of account
sale, and, if said cattle sell for more than four cents, I
am to have the difference.        C. W. Carroll."

"I agree to pay C. W. Carroll whatever said cattle
sell for over four cents, on my half interest.
"L. J. Cusick."

The answer sets out the contract and contains
averments that when the contract was made the cattle
were in transit to the Chicago market; that they were
sold for less than four cents per pound; and that the
note in suit was given to said Cusick to make good to
him the four cents per pound for the cattle under the
contract, and that there was no other consideration for
the note. A demurrer to the answer presents the ques-
tion as to the validity of the contract. The district
court sustained the demurrer, and from a judgment for
plaintiff for the amount of the note the defendants
appeal.

*Maxwell & Leonard*, for appellants.

*McDill & Sullivan*, for appellee.

GRANGER, J.—Counsel in argument agree that the question for determination is whether or not the contract set out in the answer is a wagering contract. If so, the note in suit, given as it was in pursuance of the contract, is void under our holdings, even in the hands of the plaintiffs. *Traders' Bank v. Alsop*, 64 Iowa, 97. Appellant likens this contract, in its purpose and effect, to "option deals," which are held to be gambling contracts, and void. Appellee, however, urges as a distinctive feature that in option deals there is no actual property as a basis for the transaction, and no property is intended to be delivered or received, while in this case the cattle actually on the way to market formed the basis of the transaction, and it urges that by the contract the cattle were sold to Cusick, or, at least, an interest therein. We are unable to find any language in the contract evincing such a purpose. Cusick Bros. shipped the cattle. They are to sell the cattle in Chicago, and the contract in question is an executory one, to be performed after the cattle are sold. The transaction was clearly a speculative one as to prices. The disposition of the cattle is precisely what it would have been had the contract not been made. Cusick Bros. sold the cattle, as they intended to, for what they would bring in the market, and received the pay therefor; and this would have been the situation without the contract in question. The parties to the contract dealt alone with what would be the market price when the cattle should arrive in Chicago. The market price represented the actual value of the cattle. If the market price was above the four cents per pound, and Cusick paid the excess to Carroll, Carroll received something for nothing. If the market price was less, and Carroll paid to Cusick the difference, then Cusick received more than the value of his cattle, or, in other words,

something for nothing, and such receipts are the inspiration and soul of gambling enterprises. *Brua's Appeal*, 55 Pa. St. 294, gives the following definition: "Anything which induces men to risk their money or property without any hope of return except to get for nothing any given amount from another, is gambling." The same court, in the case of *Waugh v. Beck*, 6 Atl. Rep. 923, used this language: "A transaction in stocks by way of margin, settlement of differences and payment of gains or loss, without intending to deliver stocks, is a mere wager."

This transaction was clearly one in which the parties intended to pay the gain or loss as a market price at a future time would require, without intending to deliver property, and, under the rule given in the *Pennsylvania case* (55 Pa. St. 294), it is a wager. The mere fact that there was specific property about which the transaction occurred would make no difference. Parties may as effectually gamble with reference to actual property as with reference to the prices of different classes of property. The cases do not turn upon that point, but upon the actual intent of the parties. *Tomblin v. Callen*, 69 Iowa, 229. Appellee gives this illustration to show that Cusick had an interest in the cattle: "Suppose while in transit the cattle had been killed by the negligence of the railroad company, and the market price on the day they should have reached Chicago would have shown that the cattle would have brought five cents per pound, under Carroll's contract he would have been entitled to all the cattle would have brought over four cents per pound;" and follows with a conclusion that Carroll would have had a right of action against the railroad company. The greatest interest that could be claimed under such a state of facts would be an equitable lien for the profits resulting from the contract, and the mere fact that security is specifically given to aid a gambling contract does not make it valid. But we by no means concur in appellee's conclusion as to such an interest. As we have in substance said, the

parties did not intend an exchange of the commodity between themselves, but they contracted only with reference to what Cusick Bros. would be able to sell the cattle for in the market on arrival. It was alone a question of gain or loss, depending on the correctness of their judgments as to future prices. Of course, in actual sales, a gain or loss is or may be the result of a correct or erroneous judgment; but the absence of a purpose to deal with actual property marks the distinction between a legal and a gambling contract. It will be observed that the contract specifies that, in consideration of thirty dollars paid by Cusick, Carroll guaranteed that the cattle should sell for four cents per pound, and the validity of the contract is urged because of this payment and of the guaranty, and the case is likened to insurance. If the contract stopped with the guaranty, the case might be different, but the use of the word "guaranty," and the payment of the thirty dollars does not divest the transaction of its gambling characteristics or purpose. The word "guaranty" can have no other effect than an agreement to pay the difference, and the cash payment, while it might constitute a consideration for a valid agreement to make good a loss, will not cure or make valid what appears to be a mere chance speculation upon prices. We think the district court erred in sustaining the demurrer, and its judgment is                    REVERSED.