**MOORE et al. v. H. SEAY & CO.** (No. 2362.)

(Court of Civil Appeals of Texas. Texarkana. March 1, 1921. Rehearing Denied March 10, 1921.)

**Gaming ⬅═13—Consignment with option to sell before specified date held unenforceable.**

Contract by which seller sold cotton on consignment, and in which seller agreed to sell the cotton outright to buyer on or prior to specified date, retaining the option to take the price prevailing on any day from date of delivery to such specified date, *held* unenforceable; the transaction being a gambling transaction.

Hodges, J., dissenting.

Appeal from District Court, Hopkins County; Wm. Peirson, Judge.

Suit by H. Seay & Co. against W. D. Moore and others. Judgment for plaintiff, and defendants appeal. Reversed and rendered.

This was a suit by appellees H. Seay & Co., a copartnership, against C. B. Lynch and appellant W. D. Moore, alleged to be partners under the name of "Moore & Lynch," to recover $4,977.71, which appellees claimed said Moore and Lynch owed them by the terms of a contract covering the purchase by the former of the latter, "on consignment," of 300 bales of cotton, and against appellant the Como State Bank, a corporation under the laws of Texas, as the guarantor of the performance of said contract by said Moore & Lynch, in which judgment was rendered in favor of appellees against appellants Moore and the Como State Bank as prayed for, and in favor of said Lynch and the firm of Moore & Lynch against appellants for costs. Moore and the bank each prosecuted an appeal from the judgment.

The trial was before the court without a jury, and he found the facts to be as follows:

"On the 21st day of October, 1918, plaintiff, H. Seay & Co., bought of the defendant W. D. Moore, on consignment, 100 bales of cotton, and on the 24th day of October, 1918, advanced to said defendant on said cotton the sum of $15,482.46; on October 22, 1918, plaintiff bought of defendant Moore,, on consignment, a second 100 bales of cotton, and on the 24th day of October, 1918, advanced to said Moore on said cotton the sum of $15,789.56; on the 11th day of December, 1918, plaintiff bought of said Moore, on consignment, a third 100 bales of cotton, and on the 14th day of said month advanced to him on same the sum of $15,332.36; said 300 bales of cotton were classed and graded by plaintiff prior to delivery of same and the said cotton was delivered by defendant Moore to plaintiff, at Como, Tex., on the respective dates and on the advancements above shown; the amounts advanced by plaintiff to defendant represent the market price of said cotton for New York, ·March, 1919, deliveries on the dates of delivery. By the terms of the contract made and entered into between plaintiff and defendant Moore said defendant agreed to sell said 300 bales of cotton outright to plaintiff on or prior to February 20, 1919, he (Moore) having option to take the price prevailing on any day from date of delivery to February 20, 1919, for New York, March, 1919, deliveries, and plaintiff agreeing to pay said price therefor. It was further agreed between said parties that if the price of said cotton for New York, March, 1919, deliveries advanced between the date of delivery and February 20, 1919, and defendant did not desire to take the price prevailing on said date for said cotton, the plaintiff would make further advancement to him on same, equal to the difference in the amount advanced by plaintiff at time of delivery and the advanced price. It was further· agreed between said parties that if the price of said cotton for New York, March, 1919, deliveries, should decline between the date of delivery and February 20, 1919, the defendant would reimburse plaintiff in an amount equal to the difference between the amount advanced by plaintiff on said cotton and the decreased price, and that, in the event said defendant failed to reimburse plaintiff, after being requested so to do, plaintiff had the right and authority to close out the transactions and to take the cotton at the market price for New York, March, 1919, deliveries, on said date.

"At the time of the contract made and entered into between said parties, said defendant Moore, the owner of said cotton, did not desire to sell said cotton for the market price on the dates of delivery, but desired to consign the cotton to plaintiff and to reserve the right to sell the same outright to plaintiff at the value of said cotton for New York, March 1919, deliveries, on any date to be selected by him from date of deliveries to February 20, 1919; plaintiff desired to buy the cotton and was willing to take it and pay the value of same on said future date selected by said defendant Moore, with the understanding and agreement between it and said Moore that if said cotton for New York, March, 1919, deliveries should advance it would make a further advancement to said Moore, equal to the

difference in the amount already advanced and the increased price, and if the market price for New York, March, 1919, deliveries on said cotton should decline, that said defendant Moore would reimburse it in an amount equal to the difference between the amount already advanced and the decreased price.

"The plaintiff made and entered into the agreement with said defendant Moore to advance to him at the date of deliveries the market value of said cotton for New York, March, 1919, deliveries, in consideration of the execution and delivery to it of guaranties by the defendant Como State Bank, guaranteeing said plaintiff against any loss on said cotton by reason of the decline in market value for New York, March, 1919, deliveries, between the dates of delivery and February 20, 1919."

On February 13, 1919, the market price for such deliveries had declined and the cotton was then worth $4,977.71 (the amount sued for) less than the amount Seay & Co. had paid Moore on account of same. On said February 13, 1919, Seay & Co. requested Moore to repay said sum to them, and on his refusal to do so "in accordance" (quoting)—

"with the contract, plaintiffs on said date (February 13, 1919), in the exercise of their option, after due notice to the defendant Moore, closed out the transaction and purchased said 300 bales of cotton at the market price of same for New York, March, 1919, deliveries," according to which, as before stated, the value of the cotton was $4,977.71 less than the sum they had paid Moore on account of same.

During the time mentioned above Moore was engaged in buying spot cotton on the streets of Como, and was a customer of the appellant bank. In accordance with an arrangement between them the bank loaned Moore money to buy the 300 bales of cotton he sold Seay & Co., as well as other cotton, taking and retaining as security for the loan tickets issued to Moore evidencing the ownership of the cotton. The bank received the money paid by Seay & Co. to Moore on account of the 300 bales of cotton, and credited its account against Moore with same. During the months of October, November, and December, 1918, Moore "had no resources and no assets" (quoting) "except the cotton he had purchased with the money of said Como State Bank." "One J. A. Morris was cashier of said bank" (quoting further)—

"during the fall and winter of 1918 and 1919, and that said bank through its said cashier, acting within the scope of his authority and in accordance with the agreement heretofore set out, and for the purpose of inducing plaintiffs to purchase said 300 bales of cotton and to advance thereon at the dates of delivery the current value of same for New York, March, 1919, deliveries, agreed to and did execute and deliver its guaranties in writing to plaintiffs, guaranteeing them against any loss that might accrue to them by reason of the decline in the price of 300 bales of cotton below the price advanced to said Moore by plaintiffs; that L. Carroll was the president of said bank during said period, and at the time of the transac-

tions above set out was anxious for the defendant Moore's indebtedness to said bank to be reduced, and had requested Morris, the cashier of said bank, to have said account reduced."

Said bank was directly interested in the sale of the cotton by Moore to Seay & Co., and the latter agreed to purchase same as it did "only upon condition" (quoting)—

"that the defendant Como State Bank execute the guaranties above referred to, and that defendant Moore advised said bank through its cashier of plaintiffs' requirement, and that in order to get the then market price of said cotton based upon New York, March, 1919, deliveries to apply to the indebtedness due it by the defendant Moore, acting through the cashier, executed and delivered said guaranties to plaintiffs."

Said bank "received" (quoting)—

"all of the benefits of said contract, in that it received all of the money advanced by plaintiffs on said 300 bales of cotton and applied the same to the indebtedness due it by defendant Moore."

In accepting said guaranties Seay & Co. acted in good faith, without any notice of any want of authority in the bank's said cashier to execute same, and that "said bank" (quoting)—

"received the fruits and benefits of said contract and retained them with the full knowledge of the circumstances attending the making of the contract."

At the "time of the execution of the guaranty" by said cashier the bank's board of directors, as such, "were not informed of same," but that "C. B. Lynch and J. A. Morris, members" (quoting)—

"of the board of directors at the time of the execution of the guaranties had knowledge thereof, and that L. Carroll, president of the bank, knew of the heavy indebtedness of Moore to the bank and advised that it be reduced."

J. A. Dial and J. M. Melson, both of Sulphur Springs, for appellants.

Clark & Sweeton and T. D. Starnes, all of Greenville, for appellee.

WILLSON, C. J. (after stating the facts as above). The principal contention presented by the assignments, and the only one it will be necessary to state, is that it appeared from the allegations in Seay & Co.'s petition and from the testimony that the contract between them and Moore was a gambling transaction and therefore not enforceable. As supporting the contention, Moore and the appellant bank rely on Burney v. Blanks, 136 S. W. 806, and Wolfe v. Andrews, 192 S. W. 268; while Seay & Co. rely on Heidenheimer v. Cleveland, 17 S. W. 524, and Smith v. Duncan (Com. App.) 209 S. W. 140, as supporting a contrary view. The parties, respectively, to the contention each insist that

the cases relied upon by the other are plainly distinguishable from this one on their respective facts.

In the Heidenheimer Case, Heidenheimer on February 1, 1883, sold Cleveland & Cameron 200,000 pounds of bacon at 10.85 cents per pound, to be shipped from Kansas City on a day in August, 1883, to be designated by Cleveland & Cameron, and to be paid for by the latter when they received the invoice and bill of lading covering the shipment. It was stipulated in the contract that if the price of bacon advanced before Cleveland & Cameron designated a day in August for shipping same, Heidenheimer 'should pay Cleveland & Cameron a sum representing the amount of the advance, and if the price declined Cleveland & Cameron should pay Heidenheimer a sum representing the amount of the decline. It seems that validity of the contract was not questioned because of the stipulation referred to, for the stipulation was not discussed in any of the opinions disposing of the appeals of the case. 17 S. W. 524; 11 Tex. Civ. App. 546, 32 S. W. 826; 44 S. W. 551; 92 Tex. 108, 46 S. W. 30. The contract was attacked on the ground alone that it appeared from its face that a delivery of the bacon was not contemplated by the parties. This contention was overruled, and judgment establishing the validity of the contract was rendered on the finding of a jury that a delivery of the bacon was contemplated. We do not regard the case as of value as authority in the instant case. .

In the Smith Case, it appeared that Duncan on November 11, 1912, sold and delivered 1,188 bales of cotton to Smith, who was to pay and did then pay him about 10 cents per pound therefor, and who agreed, if the price of such cotton advanced before March 1, 1913, to pay Duncan a sum representing the amount of such advance on a day before said March 1, to be designated by Duncan. Afterwards Duncan named November 27, 1912, when the cotton was worth more than 12 cents per pound, and his suit against Smith was to recover the difference between the sum Smith had paid and the value of the cotton at the advanced price. The Commission of Appeals held the contract to be a valid one. A difference between that case and this one, it will be noted, lies in the fact that in that one no part of the money paid by the buyer to the seller at the time of the sale was in any event to be paid back to the buyer. By the terms of the contract in that case the seller was to get at least as much as the price then paid him for his cotton, and was to get more if the price of such cotton advanced before the time specified. It was a case where only one of the parties, and not both, as in the instant case, "jeopardized something" and therefore the transaction in that case was not within the definition of a wager. 20 Cyc. 921.

In the Burney Case, Blanks, by a contract made February 28, 1908, bought 133 bales of cotton of Burney to be delivered in March, 1908, and bound himself to pay and did pay Burney 10.80 cents per pound therefor. The contract contained a stipulation that if the price of such cotton should be in excess of 10.80 at any time before April 30, 1908, Burney should have the right to demand that Blanks pay him the difference, and that if the price of such cotton was less than 10.80 Burney should pay Blanks the difference. The cotton was actually delivered by Burney to Blanks. It was contended there, as it is in this case, that it was the intention of the seller to sell, and of the buyer to buy, the cotton at a price to be determined by the market value thereof at a future time, and that the payment then made by the buyer of the market value of the cotton was intended merely as an advance or partial payment. In overruling the contention the Austin Court of Civil Appeals said:

"There is no ambiguity in the terms of the contract by which the defendants agreed to sell to the plaintiff, and the plaintiff agreed to purchase from the defendants the cotton for a consideration of 10.80 cents per pound. The contract itself specifically specifies that as the amount of consideraion which plaintiff was to pay for the cotton, and the further stipulations contained in the contract do not in any wise modify the stipulation referred to. The other stipulations securing to each party an option to demand an additional settlement do not prescribe that the amount paid as a result of such settlement shall be any part of the consideration for the cotton. In fact, an additional settlement under the option conferred upon the plaintiff could not result in an additional payment for the cotton, because such payment would be made by the seller to the purchaser, instead of by the purchaser to the seller."

After holding that the facts that the optional features of the contract were connected with it and that the cotton was actually delivered did not relieve it of the charge that it was a wagering contract, the court said:

"In appellee's brief it seems to be conceded that in contracts of this character, if the parties have no interest in the future contingency, upon the happening of which one or the other is to be paid a sum of money, other than the interest secured to them by the contract, then such contract is a wager, and not enforceable; but it is contended that aside from the optional feature of this contract, both parties had an interest in the subsequent value of the thing sold. We are unable to sanction that contention. The cotton having been sold by the defendants to the plaintiff, and he having paid the full consideration therefor, the defendants were not thereafter interested in the value of the cotton. It no longer belonged to them, but to the plaintiff, who had paid the contract price for it. Hence it follows that, after the sale was made and the cotton paid for, only one, and not both, of the parties, had an interest in its subsequent value, except as

such interest was created by the optional feature of the contract."

In the Wolfe Case, Wolfe in his petition set out the contract he sued on, from which it appeared, as explained by the allegations in the petition, that on December 28, 1910, he bought 1,600 bales of cotton of Andrews at 14.39 cents per pound, and agreed that Andrews, by giving him notice, might fix the price thereof at the price prevailing at any time thereafter before March 1, 1911, he to pay Andrews the difference if the price in New Orleans was then in excess of 15.14 cents per pound, and Andrews, if he had not exercised the option given him, to pay Wolfe the difference if the price at that place on March 1, 1911, was less than 15.14 cents per pound, and then alleged, among other things, that the cotton was delivered to him, and that on December 29, 1910, he advanced Andrews $118,014.99 on account thereof; that the price of the cotton was not fixed by the terms of the contract because Andrews was not willing to sell at the price then prevailing; that Andrews did not exercise the option he had to fix the price before March 1, 1911; and that on that day the cotton was worth in New Orleans $5,193.92 less than the sum he advanced on it. On the appeal prosecuted by Wolfe from a judgment sustaining a demurrer to his petition on the ground that the contract sued on was a wagering contract, the Dallas Court of Civil Appeals, affirming the judgment, said:

"We are of the opinion that the contract relied on is a wagering one and one upon which no recovery can be had. In support of this holding we rely on the case of Burney v. Blanks, 136 S. W. 806, in which case a writ was denied by our Supreme Court. The principle announced therein we think clearly in point, and settles this case against appellant."

If there is a material difference between the Burney and Wolfe Cases and this one, it must lie in the fact that in those cases the sales, as determined on the appeals, were completed ones at the time the cotton was delivered, for a consideration then fixed and not dependent on the price of such cotton in the future, whereas in this one, as found by the trial court, the sale was "on consignment" under a contract in which Moore agreed to sell the cotton "outright" to Seay & Co. "on or prior to February 20, 1919." When the testimony is looked to to see what the trial court meant by the finding, it is seen at once that he could not have meant a sale different from those in the Burney and Wolfe Cases; for in this case, as in those, the seller sold and delivered the cotton to the buyer, who bought and at the time of the delivery "paid" or "advanced" (the witnesses used both words as meaning the same thing) the price then prevailing for such cotton; and in those cases, as in this one, the parties agreed that if the price of such cotton should advance before a named time the buyer would pay the seller the difference, and if it declined the seller would pay the buyer the difference; and in this case, as in those cases, the title to the cotton passed to the purchaser when it was delivered to him. The last statement is made in the face of the testimony of Seay & Co.'s general manager that the title to the cotton remained in Moore after Seay & Co. bought it, because it appeared from his testimony and other uncontradicted testimony that the cotton was sold and delivered to Seay & Co. to use as they saw fit to use it, and that they at once, when it was delivered to them, used it to fill contracts they had with other parties.

We think there is no escaping the conclusion that if the contracts in the Burney and Wolfe Cases were unenforceable because wagering contracts, the one in this case is unenforceable for a like reason. Therefore, if we follow the rulings in those cases, we must hold the contract in question here to be a wagering contract and unenforceable. The Supreme Court having refused to grant the writ of error applied for in the Burney Case, and so approved the conclusions reached therein, we feel bound to follow its lead, as the court did in the Wolfe Case. Hence the judgment will be reversed so far as it is against Moore and the Como State Bank, and judgment will be here rendered that Seay & Co. take nothing by their suit against them.

Associate Justice HODGES does not concur in the disposition made of the appeal. He thinks the contract was a valid one, and in a separate opinion will state his reasons for thinking the judgment should be affirmed.

HODGES, J. (dissenting). There is no disagreement about the facts of this case as found and filed by the trial court. We differ only as to the character of contract evidenced by those facts and the construction that should be placed upon it.

The question is, Do the facts establish a contract by which the parties wagered something? A wager contract is thus defined by the author of 20 Cyc. p. 921:

"A wager is a contract by which two or more parties agree that a certain sum of money or other thing of value shall be paid or delivered to one of them upon the happening of an uncertain event; it implies that each of the parties shall jeopardize something and have a chance to gain something, or to recover the stakes or thing bet or wagered upon the determining of the contingent or uncertain event in his favor; hence is a form of gambling."

Keeping that definition in view, did the buyers and the seller in this instance hazard something? In other words, did each take a chance of losing something for which he was to get no equivalent, or of gaining something for which he was to give no return? If they did, then this contract cannot be enforced. But if the facts show a contract for the sale of cotton at a price to be determined by the

state of the market on some future date and providing for an advancement of what the parties contemplated might be only a part of the purchase price, then this agreement is not a wager contract. This discussion can be abbreviated by first distinguishing the facts before us from those involved in the cases cited in the majority opinion as sustaining the judgment of reversal.

In Burney v. Blanks the contract was in writing and contained this provision:

"The said James G. Blanks has this day bought from the said J. G. Burney et al., about 200 bales of cotton to be delivered at Lockhart, Texas, not later than the —— day of March, 1908, by said Burney et al., for which said cotton said Blanks *agrees and binds himself to pay the sum of 10.81 cents per pound straight.*" (Italics mine.)

Then followed other provisions of the contract, giving to the parties the right to call for additional settlements based upon the fluctuations of the market thereafter. The provisions which followed the extract quoted clearly indicated that the parties were intending to gamble on the market price of cotton. Chief Justice Key, who wrote the opinion in that case, held that by the terms of that written agreement there was a sale of the cotton at the price stated—10.81 cents per pound; that this was the real and the only consideration to be paid by the buyer for the transfer of the title; and that the additional settlements provided for in subsequent portions of the contract which the suit attempted to enforce were independent of the purchase price. Those stipulations, while incorporated in the same writing with the contract of sale, formed no part of the consideration for the sale. At the time of the sale there was a full settlement as to the purchase price, and the additional settlements called for based upon subsequent fluctuations of the market were without consideration and evidenced a purely speculative enterprise. I fully concur in the conclusion that those provisions were illegal.

In Wolfe v. Andrews the contract was evidenced by a letter, which is as follows:

"Mr. R. G. Andrews, Winnsboro, Texas—Dear Sir: We confirm purchase from you this day through Mr. Will Rash, Sulphur Springs, Texas, of the following cotton: Sixteen hundred (1,600) bales of cotton at 14.39¢, basis middling, based on March New Orleans at 15.14¢, your option of fixing the price during market hours at any time between now and March 1, 1911, by giving notice to us of the time you select to fix the price. It is understood that at the time you select to fix the price if March New Orleans is above 15.14¢ we will pay you the difference, but if March New Orleans is below 15.14¢ you will pay the difference. Please confirm the sale by signing and returning the attached copy of this letter. Yours very truly."

Here, as in the other case, it is expressly stated that the buyer purchased 1,600 bales of cotton at a fixed price, 14.39 cents, basis middling. By the terms of that contract the purchase price, the sole consideration for the transfer of the title, was definitely named. Chief Justice Rainey, who rendered the opinion in that case, properly, I think, placed it in the same class with Burney v. Blanks, and his ruling was governed by the same principles of law. In this case the facts are materially different. Here the seller, Moore, was unwilling to take the then prevailing market price for his cotton, and no price was agreed upon. They agreed, as they had a legal right to do, that the price, the true consideration for the sale, should be determined by the market on a date to be selected by the seller between the delivery of the cotton and February 20 following. At that time neither party, of course, knew what that price would be, but agreed that whatever it was should constitute the purchase price to be paid for the 300 bales of cotton actually delivered. Moore believed the price would advance, and he wanted the benefit of the increase. Seay & Co. might have been indifferent as to whether there was an advance or not, because they could protect themselves against an advance by holding the cotton till the time Moore elected to fix the price and then sell on that market, or they might continue to hold it for a better market. The cotton was theirs to dispose of as they saw proper. Moore, however, wanted a part payment equal to the value of the cotton at the time of delivery. Seay & Co. were willing to make that advance payment provided they were protected against a possible decline which would render the cotton delivered an insufficient security for reimbursement for an overpayment. While they did not contract to hold the cotton as security for a debt, they had a right to hold it for their own benefit. In the event of a decline in the market below the sum advanced to Moore, their only protection against losing the excess would be Moore's personal liability. Seay & Co. were unwilling to rely upon that liability alone. They required Moore to return upon demand any sums advanced in excess of the market price on a given date, and also required the bank to guarantee that Moore would perform that agreement. I see nothing illegal in that transaction. That stipulation should be treated as a protection against an excessive advance payment, and not as a gamble on the market.

The fact that Seay & Co. advanced to Moore on the dates of delivery the then market value of the cotton is of no importance, except as a circumstance to be considered in determining whether or not the sum then advanced was the real and only consideration for the sale. If the facts show that it was the only consideration for the sale, then this case cannot be distinguished from Wolfe v. Andrews and Burney v. Blanks, and should be disposed of in the same manner. But if

that sum did not represent the true and full consideration which Moore might thereafter have a right to demand for the sale, this case is distinguishable from those above referred to. The trial judge expressly finds that this was not the full consideration, and his finding has been approved and adopted by this court. Let us suppose that only half of the market price had been paid over to Moore at the time this delivery was made, with the same agreement as to the ultimate sale price and the same stipulations for the protection of Seay & Co. against a decline; could it be said that the contract would then be within the same legal class with the cases just referred to? The term "advance," used by the trial judge in that connection, imports an incomplete settlement as to the consideration for the sale; it implies that there is something to follow which must be considered in determining the price to be paid for the cotton. If at the time of delivery Seay & Co. had advanced on the purchase price a sum in excess of what the cotton was worth according to the market price on the final day of settlement, then clearly they would have a right to claim from Moore reimbursement to the extent of the overpayment. This right could be asserted even without any express agreement to that effect. The law would imply a promise on the part of Moore to return what he had received in excess of what he had agreed to take for the cotton. If the findings of the trial court are to be given their proper construction, the parties did not fix the sale price, and there was no agreement that this advancement should determine the price. If upon the terms of this sale the law would imply a promise to reimburse the buyers for an excessive advancement, then it cannot be contended that the contract was tainted by incorporating an express promise to that effect.

In the cases above referred to the contracts of sale were such that no refund could have been claimed by the buyers in the event of a decline in the market price, without an agreement to that effect. The actual sale price had been definitely fixed and paid, and there could be no other legal grounds for demanding a refund. It is that feature which should be considered in distinguishing this case from those upon the facts. Let us concede that the ultimate loss or gain of the parties to this contract in profits was to be determined by the fluctuations in the market price of the cotton. That alone is not decisive of the legality of the contract. In a contract to sell cotton at a fixed price for actual delivery in the future, or in one to sell cotton actually delivered at a price to be fixed by the market on some future date, the loss or gain is determined by the same contingencies —the fluctuations in the market price; yet such agreements are not gambling contracts. The legality of a contract is not to be tested by the pecuniary consequences to the parties, but by the character of the obligations created and the consideration upon which those obligations rest. It may be said that in the last illustration just used, where the price is to be fixed by the future state of the market, the buyer would take no chance of losing, and for that reason the contract would not subject him to any hazard. In this case Seay & Co. took no chance of losing by an advance in the price of cotton. They had a right, under the terms of this contract, to hold it; and I recall nothing in this record which indicates that they did not hold it. Had they done so and cotton had advanced to a price named by Moore, they would pay him only what the cotton they then had on hand was actually worth. The hazard of having to pay a price higher than at the time of purchase would arise only from their voluntary conduct in disposing of the cotton upon a different market.

In my judgment this case falls within the rule applied by the Supreme Court in Heidenheimer v. Cleveland, and by the Commission of Appeals in Smith v. Duncan, both of which are referred to in the opinion of Chief Justice Willson. In the case of Heidenheimer v. Cleveland the facts are admitted to be practically the same as those here under consideration. In the trial court a peremptory instruction told the jury:

"That the contract was void upon its face as contrary to public policy, and that the latter clause thereof gave the right to either party to close the transaction by sight draft on the other," etc., "and consequently that they would return a verdict for the defendant"

—which the jury did. The objection to that contract, that it was contrary to public policy because it was a mere gamble on the market, was broad enough to include all forms of gambling agreements, and was specific enough to draw the attention of the court to any form of gambling disclosed on the face of the contract itself. In reversing the judgment the Supreme Court held, in effect, that if the parties contemplated an actual delivery of the subject-matter of the contract it was not illegal. The fact that the Supreme Court discussed only the question of delivery may be justified as easily upon the ground that it considered that issue the only debatable one as upon the ground that the writer of the opinion overlooked another equally serious vice in the contract. It is also held in that case that a contract susceptible of two constructions will not by preference be given the construction which will make it illegal.

My conclusion is that the judgment in this case should have been affirmed.