## H. SEAY & CO. v. MOORE. (No. 545–3702.)

(Commission of Appeals of Texas, Section A. May 21, 1924.)

**1. Gaming ⬥1—"Wager" defined.**

A wager is a contract by which two or more parties agree that a certain sum of money or other thing of value shall be paid or delivered to one of them upon the happening of an uncertain event.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Wager—Wagering Contract.]

**2. Gaming ⬥13—Consignment reserving option to select date on which to sell outright to consignee held not gambling transaction.**

Contract by which defendant sold cotton on consignment to plaintiff and in which defendant agreed to sell cotton outright to plaintiff on or prior to specified date, retaining option to take price prevailing on any day from date of delivery to such specified date, held not gambling transaction, there being no opportunity for plaintiff to gain anything.

**3. Sales ⬥8—Transaction held consignment of cotton though consignee advanced full value thereof.**

Consignment character of contract by which defendant consigned cotton to plaintiff was not altered because plaintiff advanced to defendant full value thereof, where plaintiff was fully protected for advancement by guaranty satisfactory to him.

Error to Court of Civil Appeals of Sixth Supreme Judicial District.

Suit by H. Seay & Co. against W. D. Moore. Judgment for plaintiff was reversed by Court of Civil Appeals (228 S. W. 610), and plaintiff brings error. Judgment of Court of Civil Appeals reversed and that of trial court affirmed.

Harrell & Starnes and Clark & Sweetor, all of Greenville, for plaintiff in error.

J. A. Dial and J. M. Melson, both of Sulphur Springs, for defendant in error.

CHAPMAN, J. The question before us is as to whether the following facts, found by the trial court and adopted by the Court of Civil Appeals, creates a gambling transaction. The trial court found that it was not a gambling transaction, and the Court of Civil Appeals by a divided court found that it was. The facts found are:

"On the 21st day of October, 1918, plaintiff, H. Seay & Co., bought of the defendant, W. D. Moore, on consignment, 100 bales of cotton, and on the 24th day of October, 1918, advanced to said defendant on said cotton the sum of $15,482.46; on October 22, 1918, plaintiff bought of defendant Moore, on consignment, a second 100 bales of cotton and, on the 24th day of October, 1918, advanced to said Moore on said cotton, the sum of $15,789.56; on the 11th day of December, 1918, plaintiff bought of said Moore, on consignment, a third 100 bales of cotton, and, on the 14th day of said month, advanced to him on same the sum of $15,332.36; said 300 bales of cotton were classed and graded by plaintiff prior to delivery of same and the said cotton was delivered by defendant, Moore, to plaintiff at Como,

Tex., on the respective dates and on the advancements above shown; the amounts advanced by plaintiff to defendant represents the market price of said cotton for New York, March, 1919, deliveries on the dates of delivery. By the terms of the contract made and entered into between plaintiff and defendant, Moore, said defendant agreed to sell said 300 bales of cotton outright to plaintiff on or prior to February 20, 1919, he, Moore, having option to take the price prevailing on any day from date of delivery to February 20, 1919, for New York, March, 1919, deliveries, and plaintiff agreeing to pay said price therefor; it was further agreed between said parties that if the price of said cotton for New York, March, 1919, deliveries, advanced between the date of delivery and February 20, 1919, and defendant did not desire to take the price prevailing on said date for said cotton, the plaintiff would make further advancement to him on same, equal to the difference in the amount advanced by plaintiff at time of delivery and the advanced price; it was further agreed between said parties that if the price of said cotton for New York, March, 1919, deliveries, should decline between the date of delivery and February 20, 1919, the defendant would reimburse plaintiff in an amount equal to the difference between the amount advanced by plaintiff on said cotton and the decreased price, and that in the event said defendant failed to reimburse plaintiff, after being requested so to do, plaintiff had the right and authority to close out the transactions and to take the cotton at the market price for New York, March, 1919, deliveries, on said date.

"At the time of the contract, made and entered into between said parties, said defendant, Moore, the owner of said cotton, did not desire to sell said cotton for the market price on the dates of delivery, but desired to consign the cotton to plaintiff and to reserve the right to sell the same outright to plaintiff at the value of said cotton for New York, March, 1919, deliveries, on any date to be selected by him from date of deliveries to February 20, 1919; plaintiff desired to buy the cotton and was willing to take it and pay the value of same on said future date selected by said defendant, Moore, with the understanding and agreement betweeen it and said Moore that, if said cotton for New York, March, 1919, deliveries, should advance it would make a further advancement to said Moore, equal to the difference in the amount already advanced and the increased price, and if the market price for New York, March, 1919, deliveries, on said cotton should decline, that said defendant, Moore, would reimburse it in an amount equal to the difference between the amount already advanced and the decreased price.

"The plaintiff made and entered into the agreement with said defendant, Moore, to advance to him at the date of deliveries, the market value of said cotton for New York, March, 1919, deliveries, in consideration of the execution and delivery to it of guarantees by the defendant Como State Bank, guaranteeing said plaintiff against any loss on said cotton by reason of the decline in market value for New York, March, 1919, deliveries, between the dates of delivery and February 20, 1919."

[1, 2] A wager as defined by Cyc. vol. 20, p. 921, is as follows:

"A wager is a contract by which two or more parties agree that a certain sum of money or other thing of value shall be paid or delivered to one of them upon the happening of an uncertain event; it implies that each of the parties shall jeopardize something and have a chance to gain something or to recover the stakes or thing bet or wagered upon the determining of the contingent or uncertain event in his favor, and hence is a form of gambling."

If, under this definition, there was not an opportunity for each party to gain something and an opportunity for each party to lose something, the facts do not constitute a gambling contract. The facts show that the cotton was bought on consignment, which we understand to mean that the original title remained in the seller, and this is borne out by the finding that the seller agreed to sell the cotton outright to plaintiff, on or prior to February 20, 1919, and by the further finding that the owner did not desire to sell the cotton for the market price on the dates of delivery, but desired to consign the cotton to plaintiff and to reserve the right to sell the same outright on some future date, and by the further finding that the buyer desired to buy the cotton and was willing to take it and pay the value on some future date to be selected by the seller.

The witness, J. E. Laudaner, an employé of Seay & Co., after stating that the cotton in this transaction was handled on consignment, explained the term consignment as used in their business in the following language:

"When a consignment is made, it remains open on our books because we are not the owners of the cotton; we only have a mortgage on the cotton; the original title still remains with the original owner of the cotton. The account, then, is opened and is carried on our books as an open account, and the money advanced on the cotton is charged to the man who we advanced it to, and he is credited for the proceeds of the cotton as we hold it, and sell it on his order. In other words, the account is open until he orders the cotton sold, and then he is credited with the amount of the advance or charged with any decline, and the account is carried as an open account until the owner of the cotton advises us he wants to sell that cotton entirely, and then the price is fixed on the day he tells us he wants to sell it, and until then it is kept as an open account on our books. This, as I outline, is when it is sold on consignment. It is sold at the instance of the man who owns it; we don't own it."

If the title to the cotton remained in the seller and he reserved the right to select a date on which to sell outright, then we fail to see any opportunity for gain on the part of the purchaser. If the price of cotton advanced between the date of consignment and the date that the seller selected to sell out-

right, then the seller would get the market price of his cotton on that date, and there would be no opportunity in that event for the buyer to gain anything, and if the market declined then the buyer would take the cotton at the market price, and would be reimbursed for the additional money that he had advanced to the seller, and in that event there would be no gain to the buyer for he would only receive the money that he had advanced. We think that the finding of the trial court that the transaction between buyer and seller was one of consignment, and that the seller reserved the right to sell his cotton on some future date, shows that the transaction was not a wager. We think that this holding is borne out by the authorities quoted by plaintiff in error (Smith v. Duncan [Tex. Com. App.] 209 S. W. 140; Cleveland v. Heidenheimer [Tex. Civ. App.] 44 S. W. 551), and that it is not in conflict with the authorities quoted by defendant in error for the reasons that in those cases there was an absolute sale of the cotton and the title passed from seller to buyer.

In Smith v. Duncan, cited, the following was, by section B of the Commission of Appeals, held not to be a contract of wager:

"Dear Sir: Confirming our conversation over the phone last night, beg to say that we will advance ten cents per pound 'basis middling' on such cotton as you may ship us, we to use the cotton and settle with you on our basis limit at any time between now and March 1, 1913, your option as to date. When you report the cotton as sold to us, settlement will be made as between us at the difference between ten cents and the basis price you sell at. No charge will be made for interest or insurance. We presume you are shipping the three hundred bales to-day. If you have more we would be glad to use not to exceed one thousand bales on about the same basis."

The only difference we see in the two cases is that in the Smith Case the buyer protected himself against loss of money advanced by advancing less than the value of the cotton, while in the case under consideration the buyer protected himself against loss of money advanced on the cotton by requiring a guaranty from the seller.

[3] The mere fact that the buyer advanced to the seller the full value of the cotton would make the transaction none the less one of consignment, for the buyer was fully protected for the advancement by guaranty satisfactory to him.

We recommend that the judgment of the Court of Civil Appeals be reversed and that of the trial court be affirmed.

CURETON, C. J. The judgment recommended in the report of the Commission of Appeals is adopted, and will be entered as the judgment of the Supreme Court.

PIERSON, J., not sitting.