JOHN W. FURRH v. WESTERN UNION TELEGRAPH COMPANY.

No. 4283.   Decided November 4, 1925.

(276 S. W., 645).

**Contract—Wager—Sale of Cotton—Price Fixed by Market on Future Date.**

The owner of cotton sold and delivered it, receiving payment on it at the current market price, but with the agreement that he might fix the price to be ultimately received as that current in the market at any future day within a time limited, by giving the buyer notice at that time. If this exceeded the amount already paid he was to receive the difference from the

buyers; if it was less he was to pay them the difference, and was to secure them, if the market fell, by deposit of a margin. *Held*:

(1). The contract was not invalid as being a wagering or gambling agreement. Smith v. Duncan, 209 S. W., 140; Seay & Co. v. Moore, 261 S. W., 1013; followed.

(2). In substance it amounted to a consignment to the buyers for sale at a future day to be designated by the seller.

(3). To constitute a wagering and unlawful contract each party must have a chance to gain or lose by the event. Here the seller stood to lose or gain by the future state of the market, but the buyer was unaffected by it. (Pp. 128-133.)

Question certified from the Court of Civil Appeals for the Sixth District, in an appeal from Harrison County.

The Supreme Court referred the question to the Commission of Appeals, Section A, for its opinion thereon, and here adopts same and directs that it be certified as its answer.

*Scott & Casey*, for appellant.

A contract between two parties, where the one sells outright to the other a commodity at an agreed price, reserving the right to demand payment at any time before a certain date, is not a wagering contract. 20 Cyc., 921, and notes thereunder; 27 C. J., 271, and notes thereunder; 27 C. J., 1061, and notes thereunder; Seeligson v. Lewis & Williams, 65 Texas, 215; Boggess v. Lilly, 18 Texas, 200; Mills v. Johnson, 23 Texas, 308; Roundtree v. Smith, 108 U. S., 269; Heidenheimer v. Cleveland, 17 S. W., 524; Smith v. Duncan, 209 S. W., 140; Southern Kansas Ry. Co. of Texas, v. Cox, 95 S. W., 1124; Kirkpatrick & Lyons v. Bonsall, 72 Pa. St., 155.

*Carey M. Abney* (on certified question), also for appellant.

The Court of Civil Appeals were of the opinion that the facts of this case brought it within the holdings of the courts of Civil Appeals in Burney v. Blanks, 136 S. W., 806, and Wolfe v. Andrews, 192 S. W., 268. We do not think the case comes within the rule announced by these two decisions, but should be controlled by the holdings of the Supreme Court in Seay & Co. v. Moore, 261 S. W., 1013; Smith v. Duncan, 209 S. W., 140, and Heidenheimer v. Cleveland, 17 S. W., 524. An actual delivery of the cotton was contemplated and made in this case, though the writer does not think this fact is necessarily controlling. If it was the agreement of the parties that the amount paid Dorrance & Company on delivery of the cotton was a final settlement and this amount was the full consideration for the transfer of the title, and an agreement existed between appellant and Dorrance & Company that if the market advanced, Dorrance & Company was to pay appellant the amount of the advance, but if the

market declined, appellant was to pay Dorrance & Company the amount of the decline, this provision tacked on to an executed contract would be a wagering contract. If, as in this case, the contract was that appellant was to ship the cotton to Dorrance & Company with the drafts attached to the bills of lading for amounts approximating the then market value of the cotton, and the appellant was to have the option of fixing the price at a later date, the contract would not be finally consummated until the price was fixed and such an arrangement would not be a wagering contract. In order for the contract to be a wagering contract, it is necessary that each party shall stand a chance to win or lose something by the transaction. 20 Cyc., 921. Dorrance & Company, under the terms of the contract, did not assume any risk nor did they stand a chance to profit by the advance of the market.

*Hall, Brown & Hall* and *Young, Stinchcomb & Strickland,* for appellees.

We earnestly insist that the principle in the case of Moore v. Seay & Company, 228 S. W., 610, and the cases therein cited are decisive of the case at bar. From the cases of Burney v. Blanks, 136 S. W., 806, and Wolfe v. Andrews, 192 S. W., 268, your Honors can clearly see that the contracts involved in those cases were identical with the contract between Mr. Furrh and Dorrance & Company.

### ON MOTION FOR REHEARING.

Judge Powell claims that the case at bar is governed by the cases of Smith v. Duncan, 209 S. W., 140, and Seay & Co. v. Moore, 261 S. W., 1013. Neither case cited is decisive of this case. In the case of Smith v. Duncan, supra, the buyer of the cotton, under the contract, advanced 10c per pound on the cotton, and said in the contract, "When you report the cotton as sold to us, settlement will be made as between us at the difference between 10c and the basis price you sell at." In the case of Seay & Co. v. Moore, supra, the Commission of Appeals decided the whole case on the words contained in the contract that the cotton was "Sold on consignment." The witness for Seay & Company testified that Seay & Company did not buy the cotton but made an advance on it, and took the cotton as a pledge, leaving the matter of the sale for a future time.

MR. PRESIDING JUDGE POWELL delivered the opinion of the Commission of Appeals, Section A.

This case is before the Supreme Court upon the following certificate from the Honorable Court of Civil Appeals of the Sixth District:

"In November, 1920, John W. Furrh, the plaintiff in the above entitled suit, who resided in Marshall, sold and delivered 1,000 bales of cotton to Dorrance & Company, buyers, in business in Houston. At the times he shipped the cotton Furrh drew drafts (which were paid) on Dorrance & Company for sums representing the then market value of the cotton. It appeared, however, that that value was not absolutely, but only conditionally, the price Furrh was to receive for the cotton. Testifying as a witness with reference to this, he said:

" 'I reserved the right to fix the price. By 'fixing' the price I mean you can 'fix' the price or the 'call price' at any time you see fit up until the agreed time. The agreed price in this case was up to and including the 25th day of January, 1921. At the time I sold them this 1,000 bales of cotton and shipped them the cotton the price agreed on was what is known as 'pass' price January, New York, and by that term is meant the price for the month called at any time you cared to; it meant the price I was to receive. In other words, I sold them a thousand bales of cotton and shipped it. At any time from the time I sold the cotton until the 25th day of January I had the right to fix the price on the whole or any part as I saw fit. They, Dorrance & Company, were to take the cotton at the price, middling basis, at the time I told them to fix the price. * * * If the market was higher after that (the time when he sold and shipped the cotton to Dorrance & Company) and I saw fit to call between then and January 25th I could do so and they would have to pay me the difference; and up to that time if I decided to call or became uneasy, and the price was lower than what they had paid me, in that event I would have to pay them the difference between what they paid me and the market of that date.'

"January 17, 1921, Furrh delivered to the Western Union Telegraph Company, the defendant in said suit, in Marshall, for transmission to Dorrance & Company, in Houston, a message as follows:

" 'January 17, 1921.
Dorrance & Co.,
Houston, Texas.
'Fix price 100 bales today.—John W. Furrh.'

"The message was never delivered to Dorrance & Company. With reference to it and the contract between Dorrance & Com-

pany and Furrh, the witness Van Liew, a member of the Dorrance & Company firm, testified:

" 'By the term 'fixing price 100 bales today' the following is meant: On November 4, 1920, we purchased from Mr. Furrh 1,000 bales of cotton at pass price of January contract on the New York market, basis middling, landed Houston, subject to Houston class and weight, Mr. Furrh's option of fixing the price. At any time Mr. Furrh wishes to fix the price on any 100 bales lots out of the 1,000 bales, he designates the quantity and notifies us. On his instructions we sell a corresponding number of bales on the New York Cotton Exchange and the market price of January contracts at the time our order is executed is the price Mr. Furrh gets for his cotton. For example, if Mr. Furrh instructs us to fix 100 bales at the market price we sell in New York 100 January contracts at 16.75c. Mr. Furrh's price would be 16.75c; in other words, he gets for his cotton the January quotations.'

"Van Liew testified further:

" 'Mr. Furrh drew a sight draft on Dorrance & Company at the time he shipped the cotton. This draft was for an approximate amount, and did not cover the actual price of the cotton as contract price agreed upon. In the event the market declined Mr. Furrh would deposit sufficient money with us to make up the deficit. This is what is called 'margin' in the cotton business. The contract between Mr. Furrh and Dorrance & Company was made November 4, 1920, and the cotton was bought at pass price January, New York, with Mr. Furrh having the option of fixing the prices. The 'pass' price of any contract month in the New York market means the price of that month at the time the seller fixes his price on the cotton sold us. On the 1,000 bales Mr. Furrh sold us he had until January 25, 1921, to fix his price. * * * The 1,000 bales of cotton Mr. Furrh sold us were not shipped as 'consigned' cotton. All of this cotton was shipped against an actual sale and on different dates, and sight drafts were drawn upon us with bills of lading attached, and these drafts were made for approximate amounts against each shipment, being the market value of the cotton on the day it was shipped. The bills of lading were drawn as the cotton was consigned and the drafts were paid. Mr. Furrh was obligated to reimburse our firm in an amount equal to the difference between the amount already advanced and the decreased price.

"Said suit was to recover $530, the difference, Furrh alleged, between the price he would have received for the 100 bales of cotton had the message been promptly transmitted and delivered on January 17, 1921, and the price he was able thereafter to get

for same. The case was tried to the court without a jury. He found that the telegraph company was negligent as charged against it in failing to transmit and deliver the message, but nevertheless was not liable to Furrh for damages he thereby suffered, because the contract between him and Dorrance & Company was a wagering contract, unenforcible in law. On the appeal to this court the holding of the trial court that the contract was a wagering contract was attacked as erroneous, and Furrh insisted that the judgment therefore should be reversed. The members of this court disagreed as to whether the contention should be sustained or not. Associate Judge Hodges thought it should be sustained. The other members of the court thought the contention should not be sustained, and the judgment was affirmed accordingly.

"The cause is still pending before us on a motion for a rehearing and to certify the question about which members of this court disagree to you for decision. In compliance with said motion, so far as it is to certify, and as required by Article 1620 of the Revised Statutes as amended by the Act of February 23, 1923 (General Laws, p. 72), this court respectfully certifies to you for decision a question as follows:

"Did this court err in holding on the facts stated that the contract in question between Furrh and Dorrance & Company was a wagering contract, unenforcible in law?"

We think this case is clearly ruled by the opinion of Section B of the Commission of Appeals in the case of Smith v. Duncan, 209 S. W., 140, and that of Section A of the same court in the case of Seay & Co. v. Moore, 261 S. W., 1013. In all substantial respects the facts in the cases just cited are identical with the facts we have in the case at bar. No opinions by the Supreme Court or Commission of Appeals to the contrary are cited by counsel for the Telegraph Company.

In the Duncan and Moore cases, supra, the Commission held that the contracts involved were not wagering ones. The correctness of this holding was essential to the judgment recommended by the Commission in each case. The Supreme Court adopted the judgment recommended by the Commission.

A gambling contract is thus defined by Cyc., Vol. 20, p. 921:

"A wager is a contract by which two or more parties agree that a certain sum of money or other thing of value shall be paid or delivered to one of them upon the happening of an uncertain event; it implies that each of the parties shall jeopardize something and have a chance to gain something or to recover the stakes or thing bet or wagered upon the determining of the con-

tingent or uncertain event in his favor, and hence is a form of gambling."

In speaking of the contract in the Duncan case, Presiding Judge Montgomery said:

"We think the contract is not subject to this objection. Similar contracts are frequently made by persons engaged in the cotton trade, and no doubt by dealers in other commodities. In this case the cotton was sold and actually delivered with an agreement that the price to be paid should be determined by the state of the market on a day to be selected by the seller in the future. Duncan owned the cotton, but did not wish to take the then market price. Smith wished to buy the cotton, and was willing to take it and pay the value of the cotton at a future day to be selected by Duncan. It has been decided in this state that the owner of property has the right to sell the same and contract for the future delivery thereof, provided an actual delivery is contemplated, and that the price may be left to be determined by the state of the market at the time of delivery. Cleveland v. Heidenheimer, 44 S. W., 554; S. C., 92 Texas, 108, 46 S. W., 30.

"We can see no good reason why, having sold the cotton under an agreement that the future market value should determine the price, Duncan could not deliver it in advance of the time fixed for the determination of the price. We have been cited to no case condemning a transaction of this character, and, after some search, have been unable to find a single case supporting the view of the plaintiff in error. The cases cited by the plaintiff in error are clearly distinguishable from this case."

In the Moore case, referring to the definition we have just quoted, Judge Chapman said:

"If, under this definition, there was not an opportunity for each party to gain something and an opportunity for each party to lose something, the facts do not constitute a gambling contract."

The Seay v. Moore case, 228 S. W., 610, was also by the Court of Civil Appeals at Texarkana. In that case, Justice Hodges dissented and the Commission of Appeals agreed with him. In the case at bar, Justice Hodges again dissents and says the case is like the Moore case and ruled by the decision of the Commission of Appeals therein. We think it is.

In each case there was a sale on consignment. All the facts surrounding a transaction must be considered in determining the intent of the parties. Weighing all the facts stated in the certificate, it appears conclusively that this was a sale on consignment. Witnesses use words more or less carelessly at times and

laymen rarely ever think of the legal effect of words when using them. But, reading the certificate as a whole, it is clearly shown that this was a sale on consignment just as was true in the Moore case. The cotton was delivered to Dorrance for future sale.

In the case at bar, Dorrance & Company had no chance to win or lose on the final sale of the cotton. Furrh was to get the market value for his cotton whenever it was sold. This was to be true without any reference to the advancement which had been made him when the cotton was shipped. Of course, Furrh was risking the market. It might have been better for him to *finally* sell his cotton when he shipped it. But, before the contract could be a gambling one, the other party must also have accepted a chance to win or lose depending upon the happening of an event. We are of the view that it was entirely immaterial to Dorrance as to what the cotton brought. If it brought more than the 'company had advanced Furrh, then Furrh got the increase. If it brought less, Furrh alone suffered the decline in price and was required to pay to Dorrance the difference between what the cotton brought and what had been advanced to him. In other words, Dorrance had a binding obligation against Furrh for a return of the full amount advanced him, nothing more nor less, regardless of what the cotton might bring on final sale. It seems entirely clear to us that this is not a wagering contract.

In the Smith case, the buyer advanced less than the cotton was worth and protected himself in that way against a possible future decline in the price of cotton. In the Moore case, the buyer required a guaranty against future decline in price. In the instant case, Dorrance required the putting up of a cash margin if the price declined. We think the character of security required in any given instance is of little moment. If Dorrance was satisfied with the solvency of Furrh, he was entitled to make the advance on this cotton as he did. The material test is that Dorrance could, under this contract, have recovered in a court the full amount of his advances to Furrh, regardless of the price the cotton might bring upon its final sale whenever that should take place.

We have an instance of what the Supreme Court of Iowa thought to be a gambling contract in the case of First National Bank v. Carrol, 80 Iowa, 11, 8 L. R. A., 275 N. W., 304. In that case, Cusick Brothers were to ship five cars of cattle to Carrol at Chicago. It was agreed in advance that Cusick was to to get four cents per pound upon their sale, regardless of what the market value might be when the cattle were actually sold in Chicago. In this situation, if the cattle brought more than four cents per

pound Carrol would win and Cusick would lose. On the other hand, if the price should be less than four cents per pound, Carrol would lose and Cusick would win. It was a gamble by both parties on the future market value of cattle and under the circumstances it gave to each party a chance to win or lose. Not so in the instant case. The seller of the cotton alone stood a chance to win or lose by postponing the final sale of his product. Dorrance could have no other interest in the future price of this cotton than his security for the money he had advanced thereon. He deemed this security sufficient either in the margining required under the contract or his right to recover upon a plain suit for debt.

We have referred to the Iowa case, not for the purpose of passing upon its correctness, but as an illustration of elements which must, in any event, be present in a wagering contract.

In the Moore case, as Judge Chapman said, the buyer advanced to the seller the full value of the cotton at the time of shipment. That same course was pursued in the instant case.

We think the certified question should be answered in the affirmative and we so recommend.

### ON MOTION FOR REHEARING.

We have carefully considered motion for rehearing filed herein by appellee. We think same is without merit and recommend that it be overruled.

The opinion of the Commission of Appeals answering certified questions is adopted and ordered certified to the Court of Civil Appeals.                    *C. M. Cureton,* Chief Justice.